COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Bumgardner
Argued at Salem, Virginia


CHARLES PATRICK GOODMAN
                                        OPINION BY
v.    Record No. 0222-01-3         JUDGE LARRY G. ELDER
                                       JANUARY 29, 2002
COMMONWEALTH OF VIRGINIA

          FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                    James F. Ingram, Judge

          Jane Chittom, Appellate Defender (Public
          Defender Commission, on briefs), for
          appellant.

          Jennifer R. Franklin, Assistant Attorney
          General (Randolph A. Beales, Attorney
          General, on brief), for appellee.


     Charles Patrick Goodman (appellant) appeals from his bench

trial convictions for driving under the influence of alcohol

(DUI) and aggravated involuntary manslaughter, in violation of

Code §§ 18.2-266 and 18.2-36.1(B), respectively.  On appeal, he

contends that (1) the trial court erroneously admitted into

evidence the results of blood alcohol concentration testing

performed on blood drawn without his actual consent while he was

unconscious or incoherent and apparently unable to give actual

consent; (2) his prosecutions for driving under the influence

and aggravated involuntary manslaughter violated double jeopardy

prohibitions; and (3) even if the convictions did not impose

multiple punishments for the same offense, contrary to double

jeopardy prohibitions, the evidence was insufficient to support his conviction for aggravated involuntary manslaughter because it failed to prove both causation and criminal negligence.

First, we hold the taking and testing of appellant's blood while he was incoherent or unconscious did not constitute an unreasonable search in violation of the Fourth Amendment because the blood was obtained in a manner that substantially complied with Virginia's implied consent law. Thus, admission of the test result was not erroneous. Second, we hold appellant's convictions for both DUI and aggravated involuntary manslaughter did not violate double jeopardy principles because the convictions were obtained in a single proceeding and the legislature intended to authorize the imposition of multiple punishments in these circumstances. Finally, we hold the evidence was sufficient to establish the requisite causal connection between appellant's intoxication and the victim's death and to prove appellant's behavior constituted criminal negligence. Thus, we affirm appellant's convictions.

I.

BACKGROUND

Shortly after 8:00 p.m. on Sunday, August 13, 2000, appellant lost control of the vehicle he was driving and crashed into a pickup truck traveling in the opposite direction. Appellant's passenger, Lisa Wright, died from injuries sustained in the accident.

Appellant had been drinking for several hours prior to the accident. He estimated drinking eight to eleven beers between 4:00 and 8:00 p.m. but admitted he "didn't count" how many beers he drank and "it could have been more." Between about 6:00 and 8:00 p.m., appellant drank at Erma's bar. Around 8:00 p.m., appellant and Lisa Wright left Erma's bound for an establishment called Rob's. Appellant admitted "stumbl[ing]" as they left. They departed in appellant's car with appellant at the wheel, even though appellant knew he was legally prohibited from driving because he had been adjudicated a habitual offender and knew it was not safe for him to drive because he had been drinking. Appellant had experienced no mechanical problems with his vehicle prior to the accident.

The accident occurred on a four-lane, divided road with additional exit lanes or ramps bordering both the north and southbound lanes. Immediately prior to the accident, appellant's vehicle had "just come off the . . . ramp" and was traveling north in the right through lane at a speed of at least thirty-five to forty miles per hour. Appellant's vehicle came in contact with the right curb and then veered left across the second northbound lane, across the grassy median, and across the left southbound lane into the right southbound lane, where it collided with a pickup truck driven by Louis Durham. Appellant's car was "coming very quickly" and was airborne, and the impact pushed Durham's pickup into the right exit lane.

Appellant's car left an arc of "tire smudges" spanning a distance of 218 feet from the right curb in the northbound lanes to the right curb of the southbound access lane.

Immediately after the accident, appellant, who was pinned in the driver's seat, still had "a beer can clutched to his chest," and numerous beer cans littered the floor of the car and the ground outside appellant's door. Although appellant appeared to be "passed out," witness Annette Jeter said she "could hear a loud snoring sound" coming from him. She agreed that appellant had facial lacerations and could have had facial fractures, but she testified that, based on her fourteen years of experience as a nurse, she concluded that he was not unconscious because "normally if you are unconscious you don't have a loud snoring; that reflex is basically silent and so you don't really hear a loud sound."

When Police Officer Bonnie Oaks responded to the scene, appellant looked unconscious, but he was "gurgling something" indiscernible and was "incoherent." Oaks watched as emergency personnel removed appellant's unresponsive passenger and then cut appellant from the vehicle. Oaks had observed the beer can in appellant's hand and the cans in his car and on the ground. When Oaks leaned over appellant after he had been placed on a gurney, she "could smell the strong odor of alcohol coming from his person." Oaks then placed appellant under arrest and stayed with appellant while he was transported to the hospital until

his blood was drawn for alcohol testing pursuant to the implied consent law.

Oaks tried to instruct appellant on the implied consent law while en route to the hospital, but he was incoherent. Upon their arrival at the hospital at 9:10 p.m., a registered nurse inserted an angiocath and drew several vials of appellant's blood for treatment purposes. Officer Oaks then requested a "court certified blood tech" to draw appellant's blood for testing pursuant to the implied consent law. Technician Steve Parrish arrived at about 9:15 or 9:20 p.m. and withdrew two vials of blood through the same catheter the hospital's nurse had used. Appellant remained incoherent, but he "curs[ed]" and was "somewhat combative" while his blood was being drawn. The evidence established that no fluids or other substances were administered to appellant before his blood was drawn and that only approved solutions not containing any alcohol were used to clean the site on his arm where the catheter was inserted.

Parrish gave the vials of blood to Officer Oaks, who mailed one of the vials to the lab for testing and kept the other in the property vault in case appellant wished to have it tested by an independent lab. On the counter beside appellant in the hospital treatment room, next to appellant's wallet and other possessions, Oaks left an information sheet indicating that the second blood sample would be retained by police for seventy-two hours and that appellant had the right to have the sample tested

by an independent lab.  Detective Matthew Carter then went to appellant's home, where he told appellant's wife about appellant's right to have an independent lab test the second blood sample, and he left her a second copy of the sheet containing that same information.

Laboratory test results admitted into evidence indicated that appellant had a blood alcohol concentration (BAC) of 0.29%.

At trial, appellant testified in his own defense, claiming for the first time that he thought passenger Lisa Wright had taken his wallet as they bumped into each other while leaving the bar and that she had removed the money and then pretended to have found the empty wallet on the seat of his car once they got in.  He said that he confronted her about the missing money while they were driving to Rob's, that she "grabbed his wrist" and "arm . . . and jerked [him]," and that he did not remember anything after that until he saw his wife in the emergency room.

Appellant argued at trial that the BAC test results were inadmissible.  The trial court ruled the BAC results were admissible as the product of a consensual search because the officer's actions substantially complied with the implied consent law.  In the alternative, it held the nonconsensual, warrantless seizure of appellant's blood was reasonable under the Fourth Amendment because the police had probable cause to arrest and reasonably feared loss of evidence and because the blood was taken in a reasonable manner.

Appellant also argued that his conviction for both DUI and aggravated involuntary manslaughter arising out of the same act of driving under the influence would violate double jeopardy prohibitions. The trial court implicitly denied the claim when it convicted appellant of both offenses.

Finally, appellant challenged the sufficiency of the evidence to prove that his intoxication caused the accident and that his behavior constituted criminal negligence. In convicting appellant of DUI and aggravated involuntary manslaughter, the trial court made the following findings:

> [T]he elements of [the] offense have been proven by your conduct prior to your operation of the motor vehicle in the alcohol which you consumed prior to getting behind the wheel; the fact that you didn't have a license and the actions which you took while driving immediately prior to this accident. And that . . . show[s] a total wilful disregard of human life . . . by your wilful, wanton conduct in driving.

II.

ANALYSIS

A.

ADMISSIBILITY OF BLOOD TEST RESULTS

Code § 18.2-268.2 provides, in relevant part, as follows:

> A. Any person . . . who operates a motor vehicle upon a highway . . . in this Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of

his blood, if he is arrested for a violation of § 18.2-266 . . . within two hours of the alleged offense.

B.  Any person so arrested . . . shall submit to a breath test.  If the breath test is unavailable or the person is physically unable to submit to the breath test, a blood test shall be given. . . .

Appellant contends that Code § 18.2-268.2 must be interpreted in light of Code § 18.2-268.3, which provides that if an arrestee refuses repeatedly to submit to blood or breath testing after being advised of the possible consequences of such refusal, "no blood or breath samples shall be taken," and if charged with unreasonably refusing to submit to such testing, the arrestee may introduce evidence to try to establish that his refusal was reasonable.  Thus, appellant argues, the law acknowledges instances in which the implied consent law is inoperable.  In the absence of such an interpretation, he contends, the refusal statutes would be rendered meaningless because no situation would exist in which a refusal could be found reasonable.

We disagree and hold that where the arresting officer has probable cause to believe an incoherent or unconscious driver has violated Code § 18.2-266, the implied consent law operates to permit the taking and testing of blood from that driver and that incoherence or unconsciousness does not constitute a refusal, reasonable or unreasonable, because consent is continuing.  See State Dep't of Pub. Safety v. Wiehle, 287

N.W.2d 416, 419 (Minn. 1979) (subsequently codified at Minn. Stat. § 169A.51(6) (2000)).[1]  But see State v. Wood, 576 P.2d 1181, 1183 (Okla. Crim. App. 1978) (holding that blood sample may be take from unconscious driver because unconsciousness does not constitute refusal of test under implied consent statute but that accused "must be given the opportunity, when he regains consciousness, to revoke his consent"), modified, Sartin v. State, 617 P.2d 219, 220-22 (Okla. Crim. App. 1978) (reaffirming Wood's test but noting original basis for decision no longer viable because interpretation of Oklahoma Constitution on which it was based was subsequently overruled).

As the Virginia Supreme Court observed in Deaner v. Commonwealth, 210 Va. 285, 170 S.E.2d 199 (1969), interpreting an earlier version of the implied consent law,

> [t]he implied consent of one who operates a vehicle on the public highways of Virginia to take a blood test, in the event he be charged with drunk driving, . . . is a measure flowing from the police power of the state designed to protect other users of state highways.
>
> *     *     *     *     *     *     *
>
> It is not a qualified consent and it is not a conditional consent, and therefore there can be no qualified refusal or conditional refusal to take the test.

---

[1] Many states resolve this question by statute.  See Patricia Jean Lamkin, Annotation, Admissibility in Criminal Case of Blood Alcohol Test Where Blood Was Taken From Unconscious Driver, 72 A.L.R.3d 325, §§ 9, 10 (1976 & Supp. 2001).

The fact that under the Virginia statute an accused is afforded an opportunity to establish the reasonableness of his refusal does not operate to dilute the consent previously given, or convert that consent into a qualified or conditional one. The statute does excuse from [punishment for refusal to take] the test one whose refusal is reasonable[, such as] where a person's health would be endangered by the withdrawal of blood.

Id. at 289-93, 170 S.E.2d at 201-04, quoted with approval in Cash v. Commonwealth, 251 Va. 46, 52, 466 S.E.2d 736, 739 (1996) (holding that defendant's desire to consult counsel to see how to protect herself "'from being framed'" furnished no legal basis for her refusal to submit to blood alcohol testing following DUI arrest).

As this passage makes clear, the implied consent law is "designed to protect other users of state highways," Deaner, 210 Va. at 289, 170 S.E.2d at 202, and thus, the circumstances in which one may reasonably refuse the test and abrogate the consent implied by law are narrow, such as "where a person's health would be endangered by the withdrawal," id. at 293, 170 S.E.2d at 204. To hold that an arrestee's mere inability to refuse the statutorily authorized test constitutes a refusal sufficient to abrogate the consent implied by his act of driving would contravene the intent of the legislature, especially where that inability results from unconsciousness induced by the arrestee's voluntary act of drinking.

Thus, here, the taking of appellant's blood complied with the implied consent statute, and the BAC test results were properly admitted into evidence.  Appellant was arrested for DUI within two hours of the offense.  Probable cause for the arrest existed because tire marks indicated appellant's car veered completely across a four-lane divided highway before colliding head-on with another vehicle and appellant was found in the driver's seat with "a beer can clutched to his chest," numerous other beer cans just outside the car, and "the strong odor of alcohol" emanating from his person.  See, e.g., Wohlford v. Commonwealth, 3 Va. App. 467, 471-72, 351 S.E.2d 47, 49 (1986).

Two vials of appellant's blood were drawn by a court-certified blood technician.  Although the blood was drawn through a catheter inserted by hospital personnel for use in treating appellant, the evidence established that only approved solutions not containing any alcohol were used to clean the site on appellant's arm where the catheter was inserted and no fluids or other substances were administered to appellant before his blood was drawn for BAC testing.

Finally, Officer Oaks mailed one vial of appellant's blood to the state laboratory and retained the second vial in the property vault in case appellant wished to have it tested by an independent laboratory.  Although appellant was incoherent or unconscious when his blood was drawn and appeared unable to understand what Officer Oaks attempted to tell him about his

rights regarding the second sample, Oaks left next to appellant's wallet and other personal possessions in the treatment room an information sheet indicating that the second sample would be retained by police for seventy-two hours and that appellant had the right to have the sample tested by an independent lab. Detective Carter then went to appellant's home, where he gave appellant's wife the same information, both orally and in writing.

For these reasons, we hold the trial court's admission of the certificate of analysis into evidence was not error.

B.

DOUBLE JEOPARDY

Appellant contends his convictions for DUI and aggravated involuntary manslaughter violated double jeopardy principles. We disagree.

In the context of a single trial, "the double jeopardy defense does not apply unless (a) the defendant is twice punished for one criminal act, and (b) [either] the two punishments are . . . for the same crime or one punishment is for a crime which is a lesser included offense of the other," Coleman v. Commonwealth, 261 Va. 196, 200, 539 S.E.2d 732, 734 (2001), and (c) the legislature did not intend to authorize such multiple punishments, see Payne v. Commonwealth, 257 Va. 216, 227, 509 S.E.2d 293, 300 (1999). Here, we assume without deciding that DUI as proscribed by Code § 18.2-266(ii), (iii) or

(iv) is lesser included in involuntary manslaughter as proscribed by Code § 18.2-36.1.  Nevertheless, for the reasons set out in Dalo v. Commonwealth, 37 Va. App. 156, 554 S.E.2d 705 (2001), we conclude the legislature intended to permit the imposition of multiple punishments for these offenses upon convictions obtained in a single trial.

C.

SUFFICIENCY OF THE EVIDENCE

When considering the sufficiency of the evidence on appeal of a criminal case, we view the evidence in the light most favorable to the Commonwealth, granting to that evidence all reasonable inferences deducible therefrom.  See, e.g., Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination.  See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).  The fact finder is not required to believe all aspects of a witness' testimony; it may accept some parts as believable and reject other parts as implausible.  See Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).

A conviction for involuntary manslaughter in violation of Code § 18.2-36.1(A)[2] (hereinafter "vehicular involuntary manslaughter") requires proof that the accused was driving under the influence, see Cottee v. Commonwealth, 31 Va. App. 398, 400, 524 S.E.2d 132, 133 (2000), and that a causal connection exists between the driver's intoxication and the death of another person, see Pollard v. Commonwealth, 20 Va. App. 94, 99, 455 S.E.2d 283, 286 (1995).  A conviction for aggravated involuntary manslaughter in violation of Code § 18.2-36.1(B) requires proof, in addition, that the driver's "conduct . . . was so gross, wanton and culpable as to show a reckless disregard for human life," i.e., that the driver was criminally negligent.  See Cottee, 31 Va. App. at 400, 524 S.E.2d at 133.  On appeal, appellant concedes he was intoxicated at the time of the accident but argues the evidence fails to prove a causal connection between his intoxication and the victim's death,

---

[2] Code § 18.2-36.1 provides as follows:

> A.  Any person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 . . . unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.
> B.  If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter . . . .

especially in light of the absence of expert testimony "as to the effects of the alcohol consumed on the driver's motor skills."  He also contends the evidence was insufficient to prove he was criminally negligent.  We disagree.

We addressed the sufficiency of the evidence to prove causation in Pollard.  In Pollard, as here, the driver conceded the evidence was sufficient to prove he was driving under the influence of alcohol but contested the sufficiency of the evidence to prove "'a causal connection between [his] driving under the influence and the death of the victim.'"  20 Va. App. at 98, 455 S.E.2d at 286.  Pollard involved a driver who hit a bicyclist while passing through an intersection.  Id. at 96, 455 S.E.2d at 284.  The evidence established that Pollard was "'going pretty fast,'" about ten miles per hour over the 35-mile-per-hour speed limit, and that he did not brake before impact.  Id. at 96-97, 455 S.E.2d at 285.  The arresting officer testified that Pollard's speech was slurred, his eyes were bloodshot, his face was flushed, and he smelled of alcohol.  Id. Pollard said, "'I know I'm drunk,'" and was unable to complete a series of field sobriety tests, but he refused to take a blood or breath test.  Id. at 97, 455 S.E.2d at 285.

In light of the above testimony, we held the evidence

> was sufficient to prove that Pollard's intoxication caused him to operate his vehicle in a manner that resulted in [the victim's] death.  The evidence proved that Pollard's speed and failure to maintain a

> proper look out contributed to [the victim's] death.  The evidence also proved that Pollard smelled of alcohol, slurred his speech and was unsteady.  Thus the proof of intoxication was sufficient to connect Pollard's speed, failure to brake, and inattention with his "impaired perception, retarded reflexes, and disrupted motor coordination."  Thus, proof of causation has been satisfied.

Id. at 99, 455 S.E.2d at 286 (quoting Beck v. Commonwealth, 216 Va. 1, 5, 216 S.E.2d 8, 10 (1975)).

Similarly, in appellant's case, the evidence "was sufficient to prove that [appellant's] intoxication caused him to operate his vehicle in a manner that resulted in [the victim's] death."  Id.  Appellant's excessive speed, reckless driving and failure to brake resulted in his veering across a four-lane divided highway and colliding almost head-on with an oncoming pickup truck traveling in the far right lane.  The evidence also proved that appellant stumbled before entering the car prior to the accident and that he smelled strongly of alcohol and was found snoring immediately following the accident.  A nurse at the scene described appellant as "passed out," and she opined that the snoring indicated appellant's reduced state of awareness was not unconsciousness resulting from any trauma he might have sustained in the collision.  Finally, a BAC test performed pursuant to the implied consent law showed appellant's BAC level less than two hours after the accident was 0.29%, more than three-and-one-half times the legal

limit of 0.08%.  See Code § 18.2-266; see also Code § 18.2-269.

Thus, even absent expert testimony regarding the probable impact

of appellant's BAC level on his ability to drive, "the proof of

intoxication was sufficient to connect [appellant's] speed,

[reckless driving], and inattention with his 'impaired

perception, retarded reflexes, and disrupted motor

coordination.'"  Pollard, 20 Va. App. at 99, 455 S.E.2d at 286

(quoting Beck, 216 Va. at 5, 216 S.E.2d at 10).

        The court was free to reject appellant's claim that the

accident occurred because the victim grabbed his arm, causing

him to lose control of the vehicle.  Once the court rejected

that testimony, the only reasonable inference flowing from the

remaining evidence, viewed in the light most favorable to the

Commonwealth, was that appellant's intoxication was the

proximate cause of the accident which led to the victim's death.

Appellant testified that his car was in good working condition

prior to the accident, and he identified no mechanical

difficulties which could have contributed to the accident.

Immediately prior to the impact, appellant's vehicle hit the

right curb on a four-lane divided highway and veered in an arc

to the left a distance of over two hundred feet, traveling

across the raised median strip and through all four lanes of

traffic, before it collided almost head-on with a vehicle

traveling in the opposite direction.  Appellant was traveling at

a high rate of speed, and no evidence indicated appellant

attempted to brake or engage in any other evasive maneuvers prior to the impact. Immediately after the impact, appellant was found behind the wheel of the car snoring and still clutching a beer can to his chest. Thus, both the eyewitness testimony and the lack of any other explanation for the impact support a finding that appellant's intoxication and incoherence or unconsciousness resulting therefrom were the proximate cause of the accident.

The evidence also was sufficient to prove appellant was criminally negligent because the manner in which he operated his vehicle "'show[ed] a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury . . . and [in circumstances under which] the offender [knew], or [may be] charged with the knowledge of, the probable results of his acts.'" Keech v. Commonwealth, 9 Va. App. 272, 279, 386 S.E.2d 813, 817 (1989) (quoting Bell v. Commonwealth, 170 Va. 597, 611-12, 195 S.E. 675, 681 (1938)). Appellant operated his car so that it crossed a raised median strip, and he drove on the wrong side of the road before colliding head-on with a pickup truck in the proper lane of travel. In addition, appellant's car was proceeding at a high rate of speed and showed no signs of braking or other evasive maneuvers prior to the fatal impact. See, e.g., Zirkle v. Commonwealth, 189 Va. 862, 869, 55 S.E.2d 24, 28 (1949).

For these reasons, we hold that the admission of appellant's BAC test results was not error, that appellant's convictions for both DUI and aggravated vehicular involuntary manslaughter did not violate double jeopardy principles, and that the evidence was sufficient to prove both the causation and criminal negligence necessary to permit his conviction for aggravated vehicular involuntary manslaughter.  Thus, we affirm appellant's convictions.

                                        <u>Affirmed.</u>