COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Annunziata and Clements
Argued at Richmond, Virginia


WILLIE HAYWOOD JACKSON

MEMORANDUM OPINION[*] BY
v.    Record No. 0113-02-2          JUDGE ROSEMARIE ANNUNZIATA
                                    FEBRUARY 4, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
James A. Luke, Judge

Mary K. Martin (Eliades & Eliades, on brief),
for appellant.

Linwood T. Wells, Jr., Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on brief), for appellee.


    Willie Haywood Jackson, appellant, was convicted in a bench

trial of four counts of distribution of cocaine.  On appeal, he

contends the trial court erred in finding the evidence

sufficient to prove his guilt beyond a reasonable doubt.  For

the reasons that follow, we affirm the decision of the trial

court.

## Background

    On appeal, we view the evidence in the light most favorable

to the Commonwealth, the party prevailing below, and grant to it

all reasonable inferences fairly deducible therefrom.  Goodman

---

[*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

v. Commonwealth, 37 Va. App. 374, 386, 558 S.E.2d 555, 561 (2002).  So viewed, the evidence establishes that Lynn Metosh was a paid, confidential informant working with members of the Multi-Jurisdictional Task Force in the City of Hopewell.  She was not available to testify at trial because she died before the matter was heard.  Evidence delineating her role in making the "buys" was introduced by the trial testimony of Detectives Jeff Clark, Michael Walls and Ralph Burton, Special Agent Steve Irwin and Officer Michael Whittington.  Their testimony established the completion of four "buys" of crack cocaine on four separate occasions, August 9, August 14, August 15 and November 14, 2000.

On August 9, 2000, Metosh and her boyfriend, Phillip, met with Officer Whittington.  Whittington searched Metosh, Phillip and Phillip's car, and found no contraband.  He gave Metosh $100 of Virginia State Police funds.  Metosh telephoned Jackson and arranged to meet him in the parking lot of the S & N market.  She and Phillip drove to the market in his car, and Whittington followed them.  Whittington testified that he never lost sight of Phillip's car and that Metosh and Phillip made no stops en route to the market.  Upon arrival at the market, Whittington identified Jackson in a green pickup truck.  He saw Metosh exit Phillip's car and enter the pickup truck, where he kept her under surveillance while the "buy" was being made.  When Metosh

exited the truck, she returned to Phillip's car and they drove from the market. Whittington followed Phillip's car to a pre-arranged meeting place where Metosh gave Whittington a plastic baggie, which contained a substance later determined to be crack cocaine. Whittington did not detect any body fluids or fecal matter on the outside of the baggie.

Metosh conducted two more "buys" of crack cocaine under the supervision of Whittington, on August 14 and 15, 2000. On August 14, 2000, Metosh and Phillip met with Whittington. Metosh called the same telephone number at which she had previously reached Jackson to arrange a "buy." Before leaving for the market, she and Phillip were searched, she was given Virginia State Police funds and Whittington followed her to the market. When Whittington arrived at the S & N market, he identified Jackson walking in front of the market. A few minutes later, Whittington observed Metosh exit her car, walk over to and enter a "large car, like a Lincoln or Towncar type car." Detective Ralph Burton, who was assigned to the Virginia Narcotics Task Force and was conducting surveillance at the market on August 14, 2000, also observed a green Lincoln Towncar in the parking lot facing the market and observed Metosh enter the Lincoln, exit and walk away. Neither Whittington nor Burton was able to see or identify the driver of the car as Jackson. Metosh and Phillip drove to another location, where Whittington met them and retrieved from Metosh a cellophane baggie that

- 3 -

contained 14 separate packages of off-white material. Whittington did not detect any body fluids or fecal matter on the outside of the baggie.

On August 15, 2000, Whittington followed essentially the same procedures as he did on August 9, 2000. He met with Metosh, who then telephoned the same number she used to initiate the "buys" on August 9 and August 14. Whittington searched Metosh, Phillip and Phillip's car, and found no drugs or other contraband. He gave Metosh Virginia State Police funds, and she proceeded to the market with Phillip in Phillip's car. Whittington followed them to the market, and they made no stops en route. When Whittington arrived at the S & N market, Jackson had not yet arrived. Metosh placed another telephone call to the number she called earlier. Approximately ten minutes later, a green pickup truck drove into the parking lot. Whittington identified Jackson as the driver of the pickup truck. He observed Metosh exit Phillip's car, enter a green pickup truck driven by Jackson and emerge with a plastic baggie that contained a substance later determined to be crack cocaine. Whittington did not detect any body fluids or fecal matter on the outside of the baggie.

On August 9, August 14 and August 15, 2000, Whittington searched Metosh, Phillip and Phillip's car before the "buy." Whittington had Metosh unhook her bra and shake it to ensure she was not hiding contraband in the bra. He also had her unbutton

- 4 -

her pants, and he checked her socks and pockets for contraband. Whittington and at least one other officer searched Phillip's car before the "buys." In addition, he thoroughly searched Metosh and Phillip after each "buy."

The final "buy" that Metosh initiated and completed took place on November 14, 2000. Metosh telephoned the same number she called on the three previous occasions and arranged a "buy" at the S & N market. Before going to the market, Metosh met with Detectives Walls and Clark. Walls searched her person, lifting her clothing and checking her shoes and pockets, and did not find any contraband. Clark drove Metosh to the market. On that day, Jackson was seen by Special Agent Irwin leaving his house and entering a green pickup truck parked in the driveway. Irwin followed Jackson to the S & N market. Under police surveillance, Metosh walked to and entered a green pickup truck at the market, and completed the "buy." When Metosh returned to Clark's car, she handed him a baggie containing a substance later determined to be crack cocaine. No body fluids or fecal matter were detected on the outside of the baggie. Walls identified Jackson as the driver of the truck.

On November 21, 2000, Walls went to Jackson's home to execute a search warrant. Walls observed Jackson pull into his driveway driving a green Lincoln Towncar. Walls advised him of his Miranda rights and testified that "Mr. Jackson stated I would find a package of crack cocaine behind the passenger's

- 5 -

side of his Lincoln parked in the driveway."  Jackson admitted he sold drugs, stating he bought half- or quarter-ounce blocks of cocaine, which he sold for $50 per rock.  He also informed Walls that he had a set of scales for weighing drugs.

## Analysis

Jackson contends on appeal that the evidence is insufficient to sustain his convictions because Metosh did not testify at trial and the police failed to conduct a body cavity search of Metosh before each of the "buys" was made.  He argues that, in the absence of Metosh's direct testimony that Jackson sold her cocaine in exchange for money, and the absence of a body cavity search, the circumstantial evidence of Jackson's guilt upon which the Commonwealth relied rises no higher than mere suspicion.  We disagree.

When the sufficiency of the evidence is challenged on appeal, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  Goodman, 37 Va. App. at 386, 558 S.E.2d at 561.  We accordingly discard all evidence of the defendant that conflicts with the Commonwealth's evidence and regard as true all credible evidence favorable to the Commonwealth.  Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986). The court must "look to that evidence which tends to support the verdict and to permit the verdict to stand unless plainly wrong."  George v. Commonwealth, 242 Va. 264, 278, 411 S.E.2d

- 6 -

12, 20 (1991). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "While a conviction may properly be based on circumstantial evidence, suspicion or even probability of guilt is not sufficient. There must be an unbroken chain of circumstances 'proving the guilt of the accused to the exclusion of any rational hypotheses and to a moral certainty.'" Gordon v. Commonwealth, 212 Va. 298, 300, 183 S.E.2d 735, 737 (1971) (quoting Brown v. Commonwealth, 211 Va. 252, 255, 176 S.E.2d 813, 815 (1970)) (additional citations and quotations omitted). However, "[t]he Commonwealth need only exclude reasonable hypotheses that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

Based on the testimony of two officers and three detectives who participated in arranging and monitoring the "buys," the evidence shows that Metosh had no opportunity to purchase or obtain the cocaine from someone other than Jackson. Metosh initiated each "buy" by calling the same telephone number to arrange the transaction. On each occasion that Metosh conducted a "buy," she was searched by the police prior to meeting with Jackson and was not carrying drugs on her person. On the occasions Metosh went to the market in her boyfriend Phillip's

- 7 -

car, August 9, August 14 and August 15, Metosh, Phillip and Phillip's car were searched before and after the buy. In transacting each of the four "buys," Metosh either was accompanied to and from the market by a detective or she was followed to the market by the police. After Metosh gave to the police the baggies of cocaine she bought from Jackson, their exterior evidenced no body fluids or fecal matter that would have suggested she was hiding drugs in a body cavity. Finally, on three occasions, August 9, August 15, and November 14, 2000, the officers observed Metosh in a pickup truck with Jackson and watched as she exited the truck and returned to the car in which she arrived. On August 14, 2000, Jackson was not identified as the driver of the vehicle Metosh entered to make the "buy." However, on that date, Metosh called the same telephone number she had used on previous occasions to initiate the "buys" from Jackson and the police observed Jackson on the premises of the market just prior to the time set for the "buy." They also observed Metosh enter a "green," "large car, like a Lincoln or Towncar type car" to conduct the buy. Moreover, on November 21, 2000, the police saw Jackson arrive at his residence in a green Lincoln Towncar where, as indicated by Jackson, they found cocaine in his car and a set of scales for weighing drugs. Jackson also admitted that he was engaged in selling drugs.

Based on this evidence, the trial court could reasonably infer that Jackson was the driver of the Lincoln on August 14,

2000 and that he sold cocaine to Metosh on that date as well. "Inferences . . . are elemental ingredients of the fact finding process." Morton v. Commonwealth, 13 Va. App. 6, 9, 408 S.E.2d 583, 584 (1991). "An inference . . . permits a finder of fact to conclude the existence of one fact from the proof of one or more other facts." Id.

Jackson contends that the absence of Metosh's testimony at trial and the failure of the police to conduct a body cavity search before she made the "buys" is fatal to the Commonwealth's case. We disagree. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman, 226 Va. at 53, 307 S.E.2d at 876. We find the evidence, although circumstantial, supports the trial court's finding that Metosh purchased cocaine from Jackson on the four occasions at issue and that the evidence excludes all other reasonable hypotheses.

We find no error and affirm.

Affirmed.