[J-94-2016] [MO: Wecht, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 7 EAP 2016 |
| | : | |
| Appellant | : | Appeal from the Judgment of Superior |
| | : | Court entered on 6/15/2015 at No. 2774 |
| | : | EDA 2013 (reargument denied |
| v. | : | 8/7/2015) affirming the Order entered on |
| | : | 8/27/2013 in the Court of Common |
| | : | Pleas Philadelphia County, Criminal |
| DARRELL MYERS, | : | Division at no. MC-51-CR-0052681- |
| | : | 2012. |
| Appellee | : | |
| | : | ARGUED:  September 14, 2016 |

## DISSENTING OPINION

**JUSTICE MUNDY**                              **DECIDED:  July 19, 2017**

I respectfully dissent from the resolution reached by the Majority.  Unlike the Majority, I conclude that Pennsylvania's implied consent statute authorized the warrantless blood draw in this case.  Furthermore, I cannot agree that the blood draw violated Myers' Fourth Amendment rights, even in light of the Supreme Court of the United States' recent decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016).

I begin with the statutory portion of the case.  As the Majority correctly observes, Pennsylvania's implied consent statute provides, in relevant part, as follows.

> **§ 1547. Chemical testing to determine amount of alcohol or controlled substance**
>
> **(a) General rule.--**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth **shall be deemed to have given consent to one or more chemical tests of breath or blood** for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has

> reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:
>
>> (1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock)[.]

75 Pa.C.S. § 1547(a)(1) (emphasis added).[1]  The text reveals the General Assembly's intent to generally deem all drivers on Pennsylvania's roads as having consented to blood or breath tests.  *See Abraham v. Shapp*, 400 A.2d 1249, 1251 n.4 (Pa. 1979) (stating, "[t]he term 'shall' has generally been interpreted as being mandatory[]").  However, subsection (b)(1) provides that "[i]f any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted[.]"  75 Pa.C.S. § 1547(b)(1).  This Court has explained that under Section 1547(a), "testing is allowed absent an affirmative showing of the subject's refusal to consent to the test at the time that the testing is administered."  *Commonwealth v. Eisenhart*, 611 A.2d 681, 683 (Pa. 1992).  We explained in *Eisenhart* that "[t]he relationship between the Implied Consent provision of Section 1547(a) and the suspension for refusal under Section 1547(b) is such that a driver may revoke his Implied Consent under Subsection (a) by refusing."  *Id.*  The dispute between the parties is whether, once the officer has probable cause and makes the request for the blood draw, the opportunity to exercise the statutory right of refusal is a **requirement** of Section 1547.  In other words, if the driver does not have the opportunity, through no

---

[1]  This Court has held that "reasonable grounds" means probable cause. *Commonwealth v. Kohl*, 615 A.2d 308, 313 (Pa. 1992).  *Kohl* pertained to subsection (a)(2), which is not at issue here.  However, as can be seen from the text, the "reasonable grounds" requirement governs both subsections (a)(1) and (a)(2).

fault of law enforcement, to exercise the right of refusal, for whatever the reason, does the statute still permit the test to be conducted as the Commonwealth maintains, or does it preclude the test from being conducted, as Myers contends, and the Superior Court concluded?

After careful consideration, I agree with the Commonwealth. The plain language of Section 1547(a)(1) reveals that anyone who drives on the roads of this Commonwealth has given implied consent to a blood test to measure blood alcohol content if the officer has probable cause to believe the person committed DUI. 75 Pa.C.S. § 1547(a)(1). However, the plain language of subsection (b)(1) reveals that if a request is made upon arrest, the driver may refuse the test for any reason, or no reason whatsoever. Therefore, as we explained in *Eisenhart*, the interaction between subsection (a)(1) and subsection (b)(1) breaks down into three basic parts. First, the driver operates a motor vehicle on the roads of the Commonwealth, thereby giving implied consent to a blood draw. Second, the officer develops probable cause for DUI and makes an arrest, after which the officer may request that the arrestee submit to the blood draw. Third, once the request is made, the driver may refuse the test, and if refused, "the testing shall not be conducted[.]" *Eisenhart*, 611 A.2d at 683; 75 Pa.C.S. § 1547(b)(1).

In my view, the Superior Court's requirement that the officer must always give a driver an opportunity to exercise subsection (b)(1)'s right of refusal lacks a basis in the statutory text, and frustrates the purpose of the implied consent scheme. As noted above, subsection (b)(1) gives a driver a statutory right to revoke his or her consent to the blood draw.[2] Therefore, logically speaking, one who has been deemed to have

---

[2] The Supreme Court of the United States has previously referred to such a right of refusal as "simply a matter of grace bestowed by the . . . legislature" and not constitutionally required. *South Dakota v. Neville*, 459 U.S. 553, 563-64 (1983). In (continued…)

given consent and does not affirmatively revoke consent has still given it.[3]  However, the Superior Court's construction of Section 1547 negates the plain language of the statute, which unambiguously establishes implied consent when an individual chooses to operate a motor vehicle in Pennsylvania, and instead allows a driver to give affirmative consent at the time of the officers' request for the actual blood draw.  *See* 75 Pa.C.S. § 1547(a)(1).  The Superior Court and the Majority read Section 1547 to require the obtaining of consent, when, in fact, the statute, on its face, is an implied consent statute.[4]  We are required to give effect to all of Section 1547's subsections if possible.  *See* 1 Pa.C.S. § 1922(2) (stating, "[t]hat the General Assembly intends the entire statute to be effective and certain[]").  If the General Assembly had wished for Section 1547 to

---

(…continued)
addition, the Supreme Court and other tribunals have noted that legislatures added the statutory rights as a mechanism for avoiding any violent confrontations that could arise if a blood draw were needed to be administered by force.  *Id.* at 559-60; *see also Bush v. Bright*, 71 Cal. Rptr. 123, 124 (Cal. Ct. App. 1968); *Roche v. State*, 462 A.2d 1083, 1084 (Del. 1983); *State v. Humphreys*, 70 S.W.3d 752, 761 (Tenn. Ct. App. 2001) (citation omitted).

[3] I agree with the Majority that Myers possesses the same statutory right of refusal as any other driver.  *See generally* Majority Op. at 15-16.  Indeed, the statute does not draw any distinction between conscious and unconscious drivers.  What I dispute is not who possesses the statutory right, but what the state law consequence is if the driver is unable to exercise it.

[4] The Majority does not disguise the notion that it has turned the General Assembly's implied consent statute into an actual consent statute.  *See* OAJC at 23 (stating that "[o]ur implied consent statute is not an *ipso facto* authorization to conduct a chemical test, [but r]ather, it is the statutory mechanism by which a police officer may seek to obtain voluntary consent, unique to this context in that the law prescribes consequences for the failure to provide such consent[]").  Respectfully, this renders the statute desultory, because law enforcement does not need legislative authorization to obtain voluntary consent for a search.  If all the statute accomplishes is an embodiment of the consent exception, it begs the question why the officer needs probable cause in the first place.  *See* 75 Pa.C.S. § 1547(a)(1) (requiring the officer to have "reasonable grounds" that the driver has committed DUI).  Consent searches do not depend on the enactment of any, in the Majority's words, "mechanism," much less probable cause.  *Id.*

operate in this manner, it could have done so by eliminating Section 1547(a)(1) altogether. *See, e.g.*, *Goodman v. Commonwealth*, 558 S.E.2d 555, 560 (Va. Ct. App. 2002) (stating, "[t]o hold that an arrestee's mere *inability* to refuse the statutorily authorized test constitutes a refusal[,] sufficient to abrogate the consent implied by his act of driving[,] would contravene the intent of the legislature[]") (emphasis in original). However, by requiring such a request in every circumstance, the Superior Court and the Majority have read Section 1547(a)(1) and the very concept of implied consent out of the implied consent statute.

I recognize that the facts of this case may give some pause, as Myers was plainly unaware that his blood was being extracted from his body at the direction of the police for the purposes of prosecution. As unsettling as the facts may be, they do not justify using statutory construction to nullify a central provision of a duly enacted statute of our Legislature. Because there is no dispute that probable cause for DUI existed in this case, and Myers did not revoke his implied consent to a blood draw, I conclude the warrantless blood draw was authorized under Section 1547(a)(1).[5]

I next turn to the question whether the blood draw violated Myers' Fourth Amendment rights. Because *Birchfield* did not exist at the time the Superior Court rendered its decision, the panel viewed the case as an "application of the [then-] recent

---

[5] The Majority explains, as part of its statutory construction analysis, that Section 1547 is not an "independent exception" to the Fourth Amendment's warrant requirement. *See generally* OAJC at 17-31. However, as the Majority plainly acknowledges, previous opinions of this Court have stated it is. *See Commonwealth v. Riedel*, 651 A.2d 135, 139 (Pa. 1994); *Kohl*, 615 A.2d at 315. In addition, the Majority's pronouncements in this regard appear to be contingent on its conclusion that Section 1547 is an actual consent statute, which as I have explained, it is not. *See generally* Majority Op. at 17. In any event, the Superior Court did not explicitly decide whether Section 1547 serves as an independent exception to the warrant requirement. Its conclusion was based solely on Myers not being able to utilize the statutory right of refusal and on *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), which I discuss *infra*.

United States Supreme Court decision in . . . [*McNeely*]." *Myers*, 118 A.3d at 1125.

Myers likewise relies on *McNeely* in his brief. *See* Myers' Brief at 7, 9-10, 16.

In *McNeely*, the Supreme Court explained that, because a blood draw was unquestionably a search within the meaning of the Fourth Amendment, a warrant was generally required, unless one of the exceptions to the warrant requirement applied. *Id.* at 1558. One such exception was searches based on exigent circumstances, "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* (quoting *Kentucky v. King*, 563 U.S. 452, 460 (2011)). Missouri sought a *per se* rule that the natural dissipation of alcohol from the bloodstream was always an exigent circumstance, such that there was never a need to get a warrant for a blood draw in DUI cases. *Id.* at 1560. The Court rejected Missouri's *per se* exigency argument, instead concluding that whether exigent circumstances exist in DUI cases must be determined in each individual case, based on the totality of the circumstances. *Id.* at 1559.

Both Myers and the Superior Court overstate the import of *McNeely*. It has been the law since 1966 that a blood draw is a search within the meaning of the Fourth Amendment, and the Commonwealth does not argue to the contrary. *See generally Schmerber v. California*, 384 U.S. 757, 767 (1966). The only import of *McNeely* is that it rejected Missouri's request for a *per se* rule that the natural dissipation of alcohol in the bloodstream is *always* an exigent circumstance.[6] *McNeely* did not break any new

---

[6] To be sure, post-*McNeely* it is still possible for the Commonwealth to show an exigency exists, under the totality of the circumstances of each case. *See generally McNeely,* 133 S. Ct. at 1559 (stating, "[t]o determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of circumstances[]"). This is particularly crucial for the more rural counties of this Commonwealth. Many of these counties are larger by area, yet may only have one hospital and only one magistrate on call on any particular night to review warrant applications. Moreover, there may be a great distance between the arrest site, the (continued…)

ground, much less void implied consent statutes. To the contrary, *McNeely* noted, with seeming approval, that all 50 states have adopted some form of an implied consent statute. *McNeely*, 133 S. Ct. at 1566. The Superior Court's remaining pronouncements appear to be tied to its conclusion that because Myers did not have a chance to exercise his statutory right of refusal, a warrant was required. *See Myers*, 118 A.3d at 1130 (stating, "because police did not act pursuant to the implied consent law until 4:45 p.m., after Myers had been rendered unconscious by an intervening cause that occurred subsequent to his DUI arrest and transport to the hospital, we conclude *McNeely* controls here[]"). As I have explained, the implied consent statute authorized the blood draw in this case. Therefore, *McNeely* does not resolve the case before us.

I next address the parties' arguments as to whether *Birchfield* controls this case. *Birchfield* addressed three unrelated cases involving defendants Birchfield, Bernard, and Beylund. Birchfield and Beylund's cases were each from the Supreme Court of North Dakota and concerned warrantless blood tests. Bernard's case came from the Supreme Court of Minnesota and dealt with a warrantless breath test.[7] In *Birchfield*, the Supreme Court held that a warrantless blood draw cannot be performed as a search incident to an arrest. *Birchfield*, 136 S. Ct. at 2184. In addition, the Court held that the searches could not be justified under the consent exception to the warrant requirement,

_____

(…continued)
hospital, and the magistrate. Undoubtedly, these are critical factors in conducting an exigency analysis. *See generally Michigan v. Tyler*, 436 U.S. 499, 509 (1987) (noting that a search "may be legal when there is compelling need for official action and no time to secure a warrant[]").

[7] I note the Court held that a warrantless breath test may be administered as a search incident to arrest for DUI. *Birchfield*, 136 S. Ct. at 2186.

concluding that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense."[8]  *Id.* at 2186.

Nevertheless, a strict application of *Birchfield* would lead to a peculiar result in this specific case.  *Birchfield* stands for nothing more than the proposition that if a conscious driver refuses a blood draw, that driver cannot be subjected to criminal punishment for his or her refusal.  *Id.*  *Birchfield* does not inform this Court how Pennsylvania's implied consent scheme should be construed, nor does it dictate how Section 1547 should be applied to an unconscious driver.[9]

---

[8]  North Dakota's implied consent scheme specifically stated "[a]n individual who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state who refuses to submit to a chemical test, or tests . . . is guilty of an offense."  N.D.C.C. § 39-08-01(2)(a).  Although Pennsylvania does not make refusal a separate crime, it nevertheless imposes higher mandatory minimum and maximum criminal penalties for refusal.  *Compare* 75 Pa.C.S. § 3804(a) (stating that a driver's first Section 3802(a)(1) offense without refusal sets the mandatory minimum sentence at 6 months' probation and a $300.00 fine), *with id.* § 3804(c) (stating that a driver's first Section 3802(a)(1) offense with refusal sets the mandatory minimum sentence at three days' imprisonment plus a $1,000-$5,000 fine).  This is a distinction without a constitutional difference, as both schemes threaten the motorist with criminal punishment for refusal at the time of the requested Fourth Amendment search.  *See generally Apprendi v. New Jersey*, 530 U.S. 466, 491 (2000) (stating that, other than the fact of a prior conviction, any fact that aggravates the maximum penalty to which the defendant is exposed is an element of an aggravated offense that must be submitted to a jury, and proven beyond a reasonable doubt); *Alleyne v. United States*, 133 S. Ct. 2151, 2162-63 (2013) (reaching the same conclusion for facts that increase the mandatory minimum sentence to which the defendant is exposed).

[9]  I acknowledge that the Supreme Court noted that "a blood test . . . may be administered to a person who is unconscious [but the Court] believe[d] that such situations [were not] common in drunk-driving arrests, and when they arise, the police may apply for a warrant if need be."  *Birchfield*, 136 S. Ct. at 2184-85.  However, this was at best dicta since *Birchfield* did not pertain to an unconscious driver.  Moreover, as the Commonwealth notes, this sentence appears in the context of the Court's discussion of the search incident to arrest exception, not its implied consent discussion.  *See* Commonwealth's Reply Brief at 8; *Birchfield*, 136 S. Ct. at 2184-85.

All parties agree that Myers was unconscious the entire time Officer Domenic was in his hospital room. *See* N.T., 5/21/13, at 25. Therefore, because an unconscious person cannot be aware of any consequences of a refusal to consent to chemical testing, Myers "could not rescind his consent." Commonwealth's Brief at 18. Moreover, the Commonwealth concedes that "because [Myers] was unconscious . . . he was not - and could not be - subject to any penalty for refusal" if he were to be convicted of DUI in this case. Commonwealth's Reply Brief at 7. As a result, due to Myers' unconscious state and the Commonwealth's concession, *Birchfield* does not apply in the instant case. Therefore, the Superior Court erred to the extent it concluded Myers' Fourth Amendment rights were violated.

In sum, I conclude that the Superior Court wrongly concluded that Section 1547 did not authorize the warrantless blood draw in this case. I reject the Superior Court's reading of Section 1547 as requiring affirmative consent by the driver in each and every case. As a state law matter, I would hold the implied consent statute permits chemical testing without a warrant based on probable cause for DUI, regardless of whether the driver, through no fault of the police, has no opportunity to exercise his or her right of refusal. This construction gives meaning to both subsection (a)(1) and (b)(1). Therefore, Section 1547(a)(1) authorized the blood draw in this case. Moreover, I further conclude the statute's application did not violate Myers' Fourth Amendment rights. Accordingly, I respectfully dissent and would reverse the order of the Superior Court.