COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Senior Judges Annunziata, Frank and Petty

CHRISTOPHER ELLIOTT HOWARD, SOMETIMES KNOWN AS
  CHRISTOPHER ELLOIT HOWARD

MEMORANDUM OPINION*
v.     Record No. 0320-22-2               PER CURIAM
                                     DECEMBER 29, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

(Michael J. Hallahan, II, on brief), for appellant. Appellant
submitting on brief.

(Jason S. Miyares, Attorney General; William K. Hamilton, Assistant
Attorney General, on brief), for appellee.


Christopher Elliott Howard's counsel filed a brief on his behalf accompanied by a motion

for leave to withdraw in accordance with *Anders v. California*, 386 U.S. 738, 744 (1967). A copy

of that brief has been furnished to Howard with sufficient time for him to raise any matter that he

chooses. Howard has not filed any *pro se* supplemental pleadings. On appeal, Howard argues

that insufficient evidence supports the jury verdicts convicting him of thirteen counts of forging

and/or uttering, in violation of Code § 18.2-172. After examining the briefs and record in this

case, the panel has determined that this appeal is wholly frivolous and unanimously holds that oral

argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a);

Rule 5A:27(a). Consequently, we affirm the trial court's judgment.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

In July 2020, Tammy Deane—Otis Shifflett's daughter and power of attorney[2]—notified Wells Fargo that forged checks had been drawn from Shifflett's Wells Fargo account. Shifflett and Deane were the only two people with permission to access Shifflett's account. Thirteen such checks, totaling $3,670, were made out to Howard. These checks were in various amounts ranging from $100 on June 14, 2020—the earliest check—to $520 on July 27, 2020—the latest check. Three of the checks, in amounts of $200, $300, and $520, were marked as being for "lessons," while the remaining ten checks had a blank memo line. All thirteen checks had Shifflett's and Deane's names printed on the top and were purportedly signed by Shifflett. Howard deposited these checks in a Wells Fargo account he opened in May 2020. He often withdrew cash in the full check amount the same day.

Howard told Wells Fargo fraud investigator Wesley Filer that April Tyler—Deane's daughter—wrote the checks and gave them to Howard for piano lessons. When Filer pressed that the amounts appeared excessive for several weeks of piano lessons, Howard claimed that he was also giving Tyler rides and teaching her to teach piano to her entire family.

Tyler testified at Howard's jury trial that she was living with Deane in 2020 and used cocaine and heroin daily. She found Shifflett's checkbook and forged checks to Howard and two others by signing Shifflett's name without his or Deane's permission or knowledge. She rode with Howard to the bank where he would cash the checks. Tyler gave Howard some money for the rides and used the rest to buy drugs.

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

[2] Shifflett passed away in October 2020.

Tyler and Deane both denied that Tyler took piano lessons from Howard and that Tyler or anyone else in her household were interested in learning piano in 2020. There was no piano or keyboard in Deane's house. Tyler testified that she wrote "lessons" on three of the checks "[j]ust to make them look more legit[imate]."

Tyler further testified, however, that Howard "wasn't aware that . . . there was anything wrong with the checks." She told Howard that he had to cash the checks for her because she did not have an identification card and claimed that he thought she had permission from Shifflett to use the checks. She maintained that Howard had "no reason to believe anything was illegal" and that he did not ask if the checks were legitimate or how she would use the money, though she admitted that, "in [her] condition at the time, he probably assumed what it was for."

Deane testified that she overheard Tyler arguing with Howard on the phone after Filer spoke with Howard during which Tyler told Howard, "you got your share." Deane knew it was Howard because Deane saw Howard's name on Tyler's phone and Tyler admitted it was Howard after the phone call. Tyler denied having that conversation or ever telling Howard that he "got [his] share."

The Commonwealth charged Tyler with twenty-four counts of forgery; she pleaded guilty to one count in exchange for the dismissal of the remaining counts. Her plea agreement did not contain a promise to testify or cooperate against any other defendants, and the Commonwealth made no other promises to Tyler in exchange for her testimony.

Howard presented evidence that he was a professional musician who played regularly at several churches in the area and gave private piano lessons. Howard's mother remembered some of Howard's piano students but did not remember if Howard had taught Tyler. She did not know if the lessons were weekly or biweekly. Howard presented no evidence about how often he provided lessons or how much he typically charged.

The jury found Howard guilty of thirteen counts of uttering a forged check, in violation of Code § 18.2-172. Howard moved to set aside the verdicts as unsupported by the evidence, and the trial court denied the motion. The court then sentenced Howard to thirteen years' imprisonment with all but thirty days suspended. Howard appeals.

ANALYSIS

Howard argues that the evidence was insufficient to support his convictions. Specifically, he argues that the Commonwealth failed to prove that he knew Tyler had forged Shifflett's checks. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Code § 18.2-172, as relevant here, makes it a crime to "utter, or attempt to employ as true, [a] forged writing [as set forth in Code §§ 18.2-168, -170], knowing it to be forged." Howard does not contest that Tyler forged the checks at issue but instead argues that he did not know that they were forged. "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)).

Here, Howard told Filer that Tyler paid him for piano lessons. If untrue, that statement would be strong circumstantial evidence of Howard's "consciousness of guilt," i.e., his knowledge that the checks were not legitimate. "[D]eceitful behavior immediately following the commission of a crime [is an act] that generally cannot be explained in terms of innocent human behavior." *See Jones v. Commonwealth*, 279 Va. 52, 58 (2010). The fact finder can consider such behavior as "evidence tending to show the defendant's consciousness of guilt of the crime committed." *Id.*; *see also Cordon v. Commonwealth*, 280 Va. 691, 695 (2010) ("[I]f a defendant's denial of circumstances relating to an illegal act is inconsistent with previous statements or facts, it is fair to infer that such denial was for the purposes of concealing guilt."). Relatedly, to the extent Howard maintains on appeal that Tyler paid him for bona fide piano lessons, settled precedent establishes that "the Commonwealth, 'need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.'" *Lucas v. Commonwealth*, 75 Va. App. 334, 348 (2022) (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)).

Tyler and Deane each testified unequivocally that Tyler did not take piano lessons, had no interest in taking piano lessons, and did not own a piano. Tyler explained that she wrote "lessons" on three of the checks "[j]ust to make them look more legit[imate]." If believed by the fact finder, that testimony clearly established that Tyler did not pay Howard for piano lessons.

Howard counters by arguing that Tyler "had a big reason to lie" to get a favorable deal regarding her own charges. He also asserts that Deane "would have a reason to lie against [Howard] because she was mad at her daughter and everyone else involved." "[D]etermining the credibility of witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App.

527, 536 (2015)). "Thus, this Court must accept 'the trial court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Canada v. Commonwealth*, 75 Va. App. 367, 386 (2022) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "[W]e may only disturb the trial court's credibility determination if the evidence is 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Lopez v. Commonwealth*, 73 Va. App. 70, 84 (2021) (quoting *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Howard does not identify any aspect of Tyler's or Deane's testimony that was inherently unbelievable. Instead, he merely attacks their motivations for testifying. A witness's potential bias is one aspect of the witness's credibility that is left to the fact finder's determination. *See Glass v. Commonwealth*, 74 Va. App. 214, 224 (2022) (declining to disturb the trial court's credibility determination despite evidence of the witness's bias). Howard's argument regarding Tyler's testimony would apply to nearly any testifying co-conspirator, and his argument regarding Deane's testimony would apply with equal force to nearly every testifying victim. Such arguments are insufficient to establish inherent incredibility.

Moreover, Howard's evidence did not contradict Tyler's and Deane's testimony regarding piano lessons. Howard presented evidence that he provided piano lessons sometimes but presented no evidence that he had taught Tyler specifically. That Howard occasionally provided piano lessons may explain why Tyler believed that writing "lessons" on the checks would make them appear more credible. The other circumstances surrounding those checks

further undermine the plausibility of Howard's hypothesis of innocence. A reasonable fact finder could conclude that it was implausible that piano lessons would require, for example, a $200 check on July 6, a $300 check on July 7, a $150 check on July 8, a $400 check on July 10, two $200 checks on July 11, a $200 check on July 12, a $300 check on July 13, and a $250 check on July 14—nine different checks in six different amounts paid to Howard over the span of only nine days.

Although Tyler's testimony disputed Howard's testimony related to his hypothesis of innocence, she maintained that he was unaware of any illegality.[3] A reasonable fact finder could disbelieve this aspect of Tyler's testimony. *See Goodman v. Commonwealth*, 37 Va. App. 374, 386 (2002) ("The fact finder is not required to believe all aspects of a witness' testimony; it may accept some parts as believable and reject other parts as implausible."). Given Howard's attempt to conceal his guilt by making false statements about the checks, the jury could reasonably conclude that Howard knew that Shifflett was not regularly writing checks to Howard[4] that Shifflett actually intended to be paid to Tyler. Because a reasonable fact finder could reject Howard's hypothesis of innocence and conclude beyond a reasonable doubt that Howard knew the checks were forged, sufficient evidence supports his convictions.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment and grant the motion for leave to withdraw. *See Anders*, 386 U.S. at 744. This Court's records shall reflect that

---

[3] Tyler's repeated assertions to this effect undermine Howard's claim that she was motivated to falsely implicate him in her scheme.

[4] There was no evidence at trial regarding whether Howard knew Shifflett or knew of Shifflett's relationship to Tyler.

Christopher Elliott Howard, s/k/a, etc., is now proceeding without the assistance of counsel in this matter and is representing himself on any further proceedings or appeal.

*Affirmed.*