COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Clements
Argued at Chesapeake, Virginia


MARIO UDASCO DALO
                                            OPINION BY
v.    Record No. 2524-00-1       JUDGE ROBERT P. FRANK
                                         NOVEMBER 20, 2001
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    A. Bonwill Shockley, Judge

               Steven C. Frucci (Brydges, O'Brien & Frucci,
               on briefs), for appellant.

               Virginia B. Theisen, Assistant Attorney
               General (Randolph A. Beales, Acting Attorney
               General, on brief), for appellee.


     Mario Udasco Dalo (appellant) was convicted in a bench

trial of involuntary manslaughter, in violation of Code

§ 18.2-36.1(A).  On appeal, he contends this conviction violated

the principles of double jeopardy because he also was convicted

of driving while under the influence (DUI), in violation of Code

§ 18.2-266, based on the same evidence.  After consideration of

the legislative scheme and implicit intentions of the General

Assembly, we affirm the involuntary manslaughter conviction.

                         BACKGROUND

     The facts are not in controversy.

     On the evening of October 5, 1999, appellant was driving on

Shore Drive in the City of Virginia Beach when he struck James

Cone and Kathy Phelan, who were walking beside the road. Cone was injured, but not fatally. Phelan was alive at the scene, but later died from her injuries.

When Virginia Beach Police Officer Scott Bishop arrived at the scene, he found appellant's speech was slurred, his eyes were glassy, and he swayed as he stood. Appellant also smelled of alcohol and could not pass a number of field sobriety tests. Appellant admitted he had consumed alcohol that evening. A breath test revealed his blood alcohol level was .11.

Appellant was charged with involuntary manslaughter under Code § 18.2-36.1(A)[1] and with DUI. The preliminary hearing and trial for these charges were held together in general district court on December 9, 1999. The DUI warrant originally recited a violation of the Virginia Beach City Code. The prosecutor amended the warrant to reflect a violation of Code § 18.2-266(ii), (iii), or (iv). The language on the DUI warrant that referred to Code § 18.2-266(i), allowing convictions based

---

[1] A defendant found guilty under Code § 18.2-36.1(A) is "guilty of involuntary manslaughter" and can be sentenced to up to ten years of imprisonment with no mandatory minimum. See Code §§ 18.2-10(e) (a defendant convicted of a Class 5 felony can be sentenced to no "more than ten years"); 18.2-36 (involuntary manslaughter is a Class 5 felony); 18.2-36.1(A) (defining a violation of this section as "involuntary manslaughter"). Under Code § 18.2-36.1(B), "[i]f, in addition [to the elements in (A)], the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter, a felony punishable by a term of imprisonment of not less than one nor more than twenty years, one year of which shall be a mandatory, minimum term of imprisonment."

on a blood alcohol concentration of .08 or more, was struck by the prosecutor. The district court convicted appellant of the amended DUI charge and certified the manslaughter charge to the grand jury. The grand jury returned a true bill of indictment on January 4, 2000.

In the circuit court, appellant moved to dismiss the indictment on double jeopardy grounds. After both parties briefed the issue, the trial court heard argument on March 14, 2000. During the hearing, the Commonwealth "stipulated" that "these two offenses don't pass [the Blockburger v. United States, 284 U.S. 299 (1932),] test." On May 2, 2000, the trial court denied the motion to dismiss.

In ruling that double jeopardy principles did not bar prosecution of the involuntary manslaughter charge under Code § 18.2-36.1, the trial court found the General Assembly intended to impose multiple punishments "for the unlawful killing of another in violation of Code § 18.2-36.1 and for the crime of driving while intoxicated in violation of Code § 18.2-266(ii), (iii) and (iv)." The trial court further found that the reference in Code § 18.2-36.1 to Code § 18.2-266(ii), (iii) and (iv) served only to "grade this offense of manslaughter, distinguishing it from the offense of common law involuntary manslaughter."

ANALYSIS

Appellant contends he was twice placed in jeopardy for the same offense when he was convicted of involuntary manslaughter following his DUI conviction.  Essentially, appellant argues that his DUI conviction, which the Commonwealth at trial conceded is a lesser-included offense of involuntary manslaughter under Code § 18.2-36.1, precludes prosecution of the greater offense.

The Fifth Amendment protection against double jeopardy includes "three separate guarantees: (1) 'It protects against a second prosecution for the same offense after acquittal. [(2) I]t protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishments for the same offense.'"  Illinois v. Vitale, 447 U.S. 410, 415 (1980) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)).  This appeal involves only the question of whether appellant received multiple punishments for the same offense.[2]

Generally, to determine whether charges are for the "same offense," courts turn to the test established in Blockburger. For example, the Supreme Court noted:

---

[2] The charges were instituted at the same time; therefore, this appeal does not involve successive prosecutions.  See Phillips v. Commonwealth, 257 Va. 548, 551-52, 514 S.E.2d 340, 342 (1999).

In Brown v. Ohio, 432 U.S. 161 (1977), we stated the principal test for determining whether two offenses are the same for purposes of barring successive prosecutions. Quoting from Blockburger v. United States, 284 U.S. 299, 304 (1932), which in turn relied on Gavieres v. United States, 220 U.S. 338, 342-343 (1911), we held that "'[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" 432 U.S., at 166.

Vitale, 447 U.S. at 416.

However, in this case, the Commonwealth conceded "these two offenses don't pass that test." Therefore, the Commonwealth is barred from arguing Blockburger on appeal, and this Court will not apply that test here.[3] See Johnson v. Commonwealth, 26 Va. App. 674, 683, 496 S.E.2d 143, 147 (1998) (finding the Commonwealth conceded at trial that an exception to the warrant requirement for searches did not apply and, therefore, the exception could not form the "basis for affirmance on appeal").

This concession does not mandate the outcome of this appeal, however, because Blockburger is not controlling. "[S]imply because two criminal statutes may be construed to proscribe the same conduct under the Blockburger test does not

---

[3] Because the Commonwealth at trial conceded DUI was a lesser-included offense, we do not address whether DUI is a lesser-included offense of involuntary manslaughter under Code § 18.2-36.1. However, this concession is not determinative of our analysis. See infra.

mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes." Missouri v. Hunter, 459 U.S. 359, 368 (1983). As the Supreme Court explained:

> The rule stated in Blockburger was applied as a rule of statutory construction to help determine legislative intent. Significantly, after setting out the rule, the Court cited a paragraph in Albrecht [v. United States, 273 U.S. 1, 11 (1927)], which included the following statement: "There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction" (emphasis added). We have recently indicated that the Blockburger rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history. Missouri v. Hunter, 459 U.S. 359, 368 (1983); Albernaz v. United States, 450 U.S. 333, 340 (1981); Whalen v. United States, 445 U.S. 684, 691-92 (1980). Indeed, it would be difficult to contend otherwise without converting what is essentially a factual inquiry as to legislative intent into a conclusive presumption of law.

Garrett v. United States, 471 U.S. 773, 778-79 (1985) (emphasis in original). See also Brown v. Commonwealth, 230 Va. 310, 313-14, 337 S.E.2d 711, 713 (1985). A Blockburger analysis is preferred by courts generally as it maximizes judicial economy, providing an answer without resorting to a more detailed examination of legislative intent. However, the Commonwealth here agreed with appellant that the Blockburger test did not allow multiple punishments here.

In this case, therefore, the issue is whether "the General Assembly has 'clearly indicated its intent to impose multiple punishments.'" Fitzgerald v. Commonwealth, 223 Va. 615, 635, 292 S.E.2d 798, 810 (1982) (quoting Turner v. Commonwealth, 221 Va. 513, 530, 273 S.E.2d 36, 47 (1980)). The structure of the Code, the language of the statutes, legislative history, and the logical implications of each interpretation assist in making this determination.[4] See Garrett, 471 U.S. at 779 & 785; Fitzgerald, 223 Va. at 636-37, 292 S.E.2d at 810-11.

Although determining legislative intent is "a factual inquiry," Garrett, 471 U.S. at 779, this analysis involves an examination of the offenses "in the abstract, rather than with reference to the facts of the particular case under review," Blythe v. Commonwealth, 222 Va. 722, 726, 284 S.E.2d 796, 798 (1981). Therefore, de novo review of the trial court's ruling is appropriate. Contrast Robinson v. Commonwealth, 17 Va. App. 551, 555, 439 S.E.2d 622, 624-25, aff'd en banc, 18 Va. App. 814, 447 S.E.2d 542 (1994) (deferring to a trial court's factual finding of no prosecutorial misconduct in deciding whether double jeopardy principles prevented retrial of a defendant)

---

[4] The failure of the General Assembly to include specific language indicating prosecution of both DUI and involuntary manslaughter arising out of the same incident is permissible does not control our analysis. See Garrett, 471 U.S. at 793. The failure to find any direct legislative history is not controlling either. See, e.g., Whalen, 445 U.S. at 690 (noting "legislative history . . . sheds no light on [this double jeopardy] question" and then continuing the analysis).

with Stephens v. Commonwealth, 35 Va. App. 141, 145-47, 543 S.E.2d 609, 611 (2001) (discussing the double jeopardy prohibition against multiple punishments for the same offense without deference to the trial court's ruling) and Spain v. Commonwealth, 7 Va. App. 385, 391-92, 373 S.E.2d 728, 731-32 (1988) (determining the General Assembly's intent without deference to the trial court's ruling in a case involving multiple punishments). See also Gatlin Oil Co., Inc. v. United States, 169 F.3d 207, 210 (4th Cir. 1999) ("Because, at this stage of the proceedings, this case turns on the proper interpretation of the Act, we review the district court's judgment de novo."); People v. Dillard, 631 N.W.2d 755, 757 (Mich. Ct. App. 2001) ("A double jeopardy challenge involves a question of law that this Court reviews de novo.").

For this analysis, "[the] starting point must be the language of the statutes." Albernaz, 450 U.S. at 336. Code § 18.2-36.1(A), initially enacted in 1989, reads: "Any person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of Code § 18.2-266 or any local ordinance substantially similar thereto unintentionally causes the death of another person, shall be guilty of involuntary manslaughter." (Emphasis added.) We presume the legislature was aware of similar language within the Code and the courts' interpretations of that language when drafting this statute.

> Legislative intent may also be gleaned by
> consulting other statutes "using the same
> phraseology," [Gilliam v. Commonwealth, 21
> Va. App. 519, 523, 465 S.E.2d 592, 594
> (1996)], and "statutes which relate to the
> same subject matter should be read,
> construed and applied together . . . ."
> Alger v. Commonwealth, 19 Va. App. 252, 256,
> 450 S.E.2d 765, 767 (1994).

Rasmussen v. Commonwealth, 31 Va. App. 233, 238, 522 S.E.2d 401, 403 (1999). See also United States v. Johnson, 32 F.3d 82, 86 (4th Cir. 1994) ("We may 'assume that our elected representatives . . . know the law.'" (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 696-97 (1979))).

A comparison of the language in Code § 18.2-36.1 and the language of several Virginia murder statutes indicates the General Assembly intended to allow multiple punishments for violations of this manslaughter section and the DUI statute.

The language in Code § 18.2-36.1 is similar to the language used in several murder statutes that reference other crimes as an element of the murder offense. For example, the first degree murder statute requires, in similar language, proof that the killing was committed "in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate or animate object sexual penetration, robbery, burglary or abduction." Code § 18.2-32 (emphasis added). The felony murder statute also uses similar language, requiring that the killing occur "while in the prosecution of some felonious act other than those specified in §§ 18.2-31 and 18.2-32." Code § 18.2-33 (emphasis

added.)  Clearly, the language of Code § 18.2-36.1 is similar to the language of these murder statutes.

None of these statutes expressly allows multiple punishments for the underlying offenses.  However, Virginia case law has interpreted this type of language to allow the simultaneous prosecution and conviction of felony murder as well as the underlying felony upon which the murder charge is based.  In Fitzgerald, for example, the Supreme Court, without relying on Blockburger, found the General Assembly did not intend to eliminate punishment of the underlying offenses when it enacted the capital murder statute.  223 Va. at 635-37, 292 S.E.2d at 810-11.  This Court then applied the analysis in Fitzgerald to "conclude that double jeopardy was not violated when [a defendant] was convicted, in a single trial, of both felony murder in violation of Code § 18.2-32 and the underlying felony."  Spain, 7 Va. App. at 391-92, 373 S.E.2d at 731-32.

Additionally, the purpose behind this language is the same in the felony murder statutes and in Code § 18.2-36.1.  For a conviction under Code §§ 18.2-32 and -33, the Commonwealth is not required to prove malice, a traditional element of murder, but need only prove the commission of the underlying felony to supply this criminal intent element.  As the Supreme Court explained:

> While § 18.2-32 contemplates a "killing with malice", the malice intrinsic in the commission of one of the predicate felonies

> "provides the malice prerequisite to a
> finding that the homicide was murder."
> Wooden v. Commonwealth, 222 Va. 758, 762,
> 284 S.E.2d 811, 814 (1981).  The same
> imputation of malice is implicit in
> § 18.2-33 which contemplates an accidental
> killing . . . .

Heacock v. Commonwealth, 228 Va. 397, 403, 323 S.E.2d 90, 93 (1984).  See also Montague v. Commonwealth, 260 Va. 697, 700, 536 S.E.2d 910, 912 (2000) (discussing Code § 18.2-33).

Likewise, while the Commonwealth is required to prove criminal negligence for a common law involuntary manslaughter conviction,[5] Darnell v. Commonwealth, 6 Va. App. 485, 491, 370 S.E.2d 717, 720 (1988) (holding "that criminal negligence is an essential element of involuntary manslaughter"), under Code § 18.2-36.1(A), no proof of criminal negligence is required.[6] Clearly, the purpose of both the felony murder statute and Code § 18.2-36.1 is to allow the Commonwealth to prove a traditional element of the offenses, the mindset or intent of the accused, by substituting the violation of a different statute for direct proof of the element.  Given the similar purpose and the similar language in these statutes, we must conclude the General Assembly similarly intended to allow multiple punishments for

---

[5] Code § 18.2-36 establishes the penalty for involuntary manslaughter but does not define the crime.

[6] Under Code § 18.2-36.1(B), if the Commonwealth can prove criminal negligence as well as a violation of Code § 18.2-266(ii), (iii), or (iv), then a defendant can be convicted of aggravated involuntary manslaughter.

violations of both Code § 18.2-36.1 and the underlying DUI, just as it did for felony murder and the underlying felony.  See Spain, 7 Va. App. at 391-92, 373 S.E.2d at 731-32.

Additionally, the language of Code § 18.2-36.1 indicates the legislature did not intend to preclude prosecution of drunk driving charges.  This section refers only to subsections (ii), (iii), and (iv) of Code § 18.2-266[7]; subsection (i), which establishes a .08 percent blood alcohol concentration as a per se violation of the DUI statute, is not mentioned.  Under Code § 18.2-36.1, therefore, the Commonwealth cannot rely on the presumption in Code § 18.2-266(i) to convict a defendant, but

---

[7] Code § 18.2-266 reads, in part,

> It shall be unlawful for any person to drive or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article, (ii) while such person is under the influence of alcohol, (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, or (iv) while such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely.  A charge alleging a violation of this section shall support a conviction under clauses (i), (ii), (iii) or (iv).

instead must prove he was under the influence as proscribed in subsections (ii), (iii), (iv).

Accordingly, as appellant concedes, a defendant who was convicted of DUI under Code § 18.2-266(i) clearly can be convicted of involuntary manslaughter in violation of Code § 18.2-36.1 without violating double jeopardy principles. We find no indication that the legislature intended to allow multiple punishments when subsection (i) is violated, but not when subsections (ii), (iii), or (iv) are violated. Such disparate results are not warranted, especially given the legislative purpose of these statutes is to provide the maximum deterrent to drunk drivers.[8] See State v. McCovey, 803 P.2d 1234, 1239 (Utah 1990) (explaining that to apply double jeopardy principles to felony murder and aggravated robbery convictions allows a "windfall" to a defendant who is charged with felony murder as opposed to another type of killing). We do not believe the General Assembly intended to give appellant such a "windfall."

The General Assembly clearly intended to allow multiple punishments in this case. For the reasons stated above, we affirm the conviction.

Affirmed.

---

[8] Appellant conceded this legislative purpose during oral argument.