COURT OF APPEALS OF VIRGINIA

Present:    Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


JAMES DARRELL WEST

                                                                OPINION BY
v.        Record No. 1133-03-2                     JUDGE ROBERT P. FRANK
                                                                JUNE 15, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

William H. Parcell, III (Parcell, Webb & Wallerstein, on briefs), for
appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on brief), for appellee.


James Darrell West (appellant) was convicted in a bench trial of one count of aggravated

involuntary manslaughter, in violation of Code § 18.2-36.1, one count of involuntary

manslaughter, in violation of Code § 18.2-36, and one count of driving under the influence, in

violation of Code § 18.2-266.  On appeal, he contends the trial court violated his Fifth

Amendment right against double jeopardy by convicting him of both aggravated involuntary

manslaughter and involuntary manslaughter.  Appellant also contends the evidence was

insufficient to convict him of the three charges.  For the reasons stated, we affirm his

convictions.

BACKGROUND

At about 9:00 p.m. on April 17, 2002, Tasharanda Gainey was driving her car westbound

on Interstate 64 in Henrico County, near the interchange with Interstate 295.  Gainey's cruise

control was set at 70 miles per hour, and the posted speed limit was 65 miles per hour.  An "older

model" burgundy car that looked like "some kind of Firebird or Oldsmobile" passed her in the right-hand lane "like [her car] was standing still." Gainey exclaimed to her passengers that the car had to be "doing at least a hundred." At trial, Gainey estimated the car's speed was around 90 miles per hour. Gainey observed the taillights of the red car for ten to fifteen seconds before it disappeared from view. She never saw the car's brake lights activate.

About fifteen seconds after the red car disappeared, Gainey saw headlights in front of her. She saw a vehicle "twisting" and then "go[ing] up in the air and then in the median." She stopped her car on the right side of the interstate and got out. Gainey observed a tan pickup truck and went to investigate, but before she neared the truck, Trooper Eric Kingston arrived. Kingston had also observed "two headlights that appeared to tumble into the center median," so he had called his dispatcher at 9:19 p.m. and stopped to investigate. The driver of the tan pickup, Burlia Gene Jenkins, Jr., died of injuries sustained in the accident.

As the officer walked Gainey back to her car, she saw a burgundy bumper lying in front of her car. They then noticed a burgundy car underneath the overpass for Interstate 295. At trial, Gainey expressed "no doubt" that this car was the same one that had passed her moments earlier. A license plate, still attached to the bumper, matched the remaining license plate on the burgundy vehicle.

The burgundy car proved to be an Oldsmobile with "extensive damage to the front end" and a missing front bumper. The car apparently had run into a support pillar for the overpass. Appellant was the only person in the car, and he was injured. At trial, Kingston explained:

> Mr. West was injured and entrapped [sic] in the vehicle, and I
> detected a strong odor of an alcoholic beverage about his person
> and began to try and speak to him, but he was very, very groggy,
> non-coherent, didn't seem to understand what I was saying to him.

*     *     *     *     *     *     *

[I]mmediately as I approached the vehicle, I detected a very strong odor of alcohol. The alcoholic beverage odor was coming from his person and the vehicle, being that he was still [sic] in the vehicle, I couldn't separate the two odors at that time. It wasn't until fire and rescue had a significant amount of time working on him to free him from the wreckage that he was put onto a stretcher, and at that time, I was still detecting a strong odor of alcoholic beverage about his person.

People at the hospital who treated appellant also testified that he smelled of alcohol that evening.

Kingston estimated the rescue squad spent at least twenty minutes removing appellant from his vehicle. Before an ambulance took appellant to MCV Hospital in Richmond, Kingston looked to see if any alcoholic beverages were inside the Oldsmobile. Although he discovered nothing at that time, when he examined the car after it was impounded, Kingston found an empty, crushed, twelve-ounce beer can and an empty, broken, 22-ounce beer bottle.

Virginia State Trooper Richard Weyant arrived at the scene at 10:18 p.m. Weyant determined, based on accident debris and markings on the road, that the point of impact was in the right lane of westbound Interstate 64. Most of the damage to appellant's car was to the left side, while the damage to the decedent's pickup truck was to its back end. Weyant observed "red paint scrapings all the way to the rear end" of the pickup truck. He concluded the Oldsmobile "forced the back end of the pickup truck up, actually bent the pickup as it more or less submarined up under the pickup truck and struck the rear-end housing." He indicated he found no skid marks from appellant's vehicle, although several "yaw marks, tire scuff marks, [and] curb tire marks" resulted from the pickup truck going sideways and flipping.

Paint samples from both vehicles were analyzed. David Toth of the Division of Forensic Science determined that the red paint on the pickup truck came from appellant's vehicle.

Trooper Weyant also examined the rear light assembly of the pickup truck. He found, "All lights, except the running lights [tail lights, side markers] worked. Turn signals and so forth

all worked." Then, once Weyant replaced the running light fuse, which had blown, "the lights came on except the right side because I'd unplugged them."

Ann Davis, a forensic scientist, examined the rear lighting assembly of the pickup truck and found "impact shock" on the two lowest running lights, on both the right and left sides of the pickup. She explained how this effect occurs:

> [W]hen a lamp is normal, the filament, the coils are evenly spaced and have a certain configuration based on the type of lamp that it is. This type of lamp that we're looking at is a lamp such as this; the normal configuration would look like that. When that filament is incandescent, it's a very, very high temperature. And when impact would hit that lamp or near that lamp, the filament, the metal itself is going to stretch and distort.

She concluded these lights were lit "at the time of impact shock," although she conceded that the accident creating the impact shock could have occurred prior to April 17th.

Several blood samples were drawn from appellant at various times that evening and the next day. A blood serum test concluded at 11:17 p.m. on April 17th found appellant had a blood alcohol level of 1190 milligrams per liter. Julia Pearson, a forensic toxicologist, testified that blood serum "runs 15 percent higher than a whole blood equivalent," and she calculated that this sample of appellant's blood reflected a whole blood alcohol level of .10. A second whole blood sample, taken on April 18th, indicated a .059 blood alcohol level. Pearson also testified that, based upon the blood samples and assuming "all the alcohol he drank that night had been fully absorbed from his stomach into his blood system," appellant's blood alcohol level would have been approximately .115 at the time of the accident.

Pearson further described the effects of intoxication on an individual:

> Alcohol is a central nervous system depressant. The way it acts is once it gets into your brain, it starts to affect various regions of your brain.

*　　*　　*　　*　　*　　*　　*

In general, the behavior can also change in the sense they may start to do things they would not normally do if they were sober due to these changes in their brain. Once the alcohol concentration gets a little bit higher, around the .05, alcohol can start to effect your visual acuity, which means at night your ability of your pupils to respond to headlights and glare is reduced. It can also reduce your reaction time or your ability to respond to an adverse event.

Um, once the alcohol gets higher than a .05, we start to see symptoms of clinical intoxication, where their ability to speak may become a little bit slurred, their motor coordination may be a little bit off, they may have a balance problem.

Once the alcohol gets above a .10, typically, there's gross symptoms of intoxication where you can clearly see that someone's been drinking, and your average individual, they may not be able to walk a straight line, may be slurring, stumbling.

Appellant testified he drank a 22-ounce beer shortly before the accident. He also admitted to drinking a twelve-ounce beer at 2:00 p.m. and another at 6:00 p.m. He denied drinking any other alcohol that day. He recalled nothing about the accident.

After the Commonwealth rested, appellant moved to strike the aggravated manslaughter and DUI charges only, based on alleged irregularities in the withdrawal of blood and the toxicology reports. Appellant also argued the evidence was insufficient to show he was driving at an excessive speed.

At the conclusion of all the evidence, appellant made a motion to strike the evidence on all three offenses. He argued no evidence proved that appellant hit the victim's truck or that he was driving at an excessive speed. He again argued irregularities in the blood testing. Appellant never argued that convicting him of both manslaughter offenses constituted double jeopardy.

In responding to the motion to strike, the Commonwealth's attorney made the following reference to double jeopardy:

[T]here is the intoxication evidence, there is the evidence of the gross negligence, so I believe the evidence is sufficient for an aggravated manslaughter. Judge, the laws in Virginia, it is, it's not double jeopardy for aggravated manslaughter and a DUI. And,

> unfortunately, and I think it's, it's just the way that the law is written, it does not appear that involuntary manslaughter is a lesser included offense of aggravated manslaughter. And for, I guess for appeal reasons, legal reasons, although there probably ought to be a lesser included offense, I think the way the statute is written, it's not, I would ask that he be convicted of that as well for appeal purposes.

Appellant did not argue with this characterization of Virginia law.

At sentencing, appellant's attorney argued that the Commonwealth was required to make "an election at some point in time of whether they wanted to go with involuntary or the aggravated manslaughter." He added, "And I would ask you to reconsider striking the aggravated manslaughter and just go on the involuntary manslaughter." He did not argue double jeopardy or any other constitutional protections as reasons why the trial court should strike one of the charges.

## ANALYSIS

### A. Double Jeopardy

The Commonwealth contends appellant did not preserve his double jeopardy argument at trial. Appellant responds that his argument at sentencing preserved the issue under Rule 5A:18. Alternatively, he asks this Court to apply the ends of justice exception to the rule. We find appellant did not preserve his double jeopardy argument, and the ends of justice exception does not apply here.

In order to preserve an issue for appeal, the objection must be "stated together with the grounds therefor at the time of the ruling." Rule 5A:18. This rule applies to issues involving constitutional principles. Ashby v. Commonwealth, 33 Va. App. 540, 544-45, 535 S.E.2d 182, 185 (2000) (appellant did not preserve speedy trial issues under either the United States or the Virginia Constitutions, therefore, the Court will not consider them on appeal).

> The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the

issues presented, thus avoiding unnecessary appeals and reversals. In addition, a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding.

Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991) (citation omitted).

While appellant did object to the convictions, he did not inform the trial court that he objected on general constitutional or double jeopardy grounds. Instead, he argued that the Commonwealth, for some unstated reason, was required to make an election between involuntary manslaughter and the aggravated offense. "Election" in the context of criminal cases can refer to a requirement that the Commonwealth choose one specific "theory of the crime" under which to proceed, see, e.g., Commonwealth v. Bruhn, 264 Va. 597, 602, 570 S.E.2d 866, 869 (2002), or can refer to the Commonwealth's decision to indict a defendant for particular crimes, see, e.g., Cardwell v. Commonwealth, 248 Va. 501, 510, 450 S.E.2d 146, 152 (1994). Using the term, "election," to argue that double jeopardy is violated by convicting appellant of both manslaughter charges, is insufficient to put the trial court on notice of the specific argument that appellant makes on appeal. See Scott v. Commonwealth, 31 Va. App. 461, 464-65, 524 S.E.2d 162, 163-64 (2000) (finding an objection to introduction of statements because they came from codefendants did not preserve an objection to the statements based on unreliable hearsay principles).[1]

As his argument did not inform the trial court that he had a double jeopardy basis for his objection, appellant did not preserve a double jeopardy objection for appeal. See Walton v. Commonwealth, 24 Va. App. 757, 761, 485 S.E.2d 641, 643 (1997) (finding defendant's objection

---

[1] In this case, a specific double jeopardy argument was especially important, as to resolve this issue as it relates to Code § 18.2-36.1, the court must interpret the intent of the legislature as evidenced in Code § 18.2-36.1(C), which states, "The provisions of this section shall not preclude prosecution under any other homicide statute." However, as appellant did not present a double jeopardy argument to the trial court, this aspect of a ruling on double jeopardy was never discussed. See Dalo v. Commonwealth, 37 Va. App. 156, 163-64, 554 S.E.2d 705, 708-09 (2001) (explaining the importance of legislative intent in double jeopardy arguments).

at trial, that suspension of his driver's license upon conviction for possession of marijuana violated substantive due process rights, did not preserve for appeal his claim that it violated the Eighth Amendment's proscription against cruel and unusual punishment).

Although he did not preserve his double jeopardy objection for appeal, appellant argues the ends of justice exception to Rule 5A:18 allows this Court to consider his assignment of error.

> Application of the ends of justice exception requires proof of an error that was "clear, substantial and material." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). The record "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997). Ordinarily, in the criminal context, application of the ends of justice exception is appropriate where "[the accused] was convicted for conduct that was not a criminal offense" or "the record . . . affirmatively prove[s] that an element of the offense did not occur." Id. at 221-22, 487 S.E.2d at 272-73. However, some procedures are so crucial that a court's failure to adhere to them constitutes error that is clear, substantial and material even in the absence of affirmative proof of error in the *result*. For example, a trial court in a criminal case has an affirmative duty properly to instruct the jury on the elements of the charged offense, even if the accused does not object or proffer a properly worded jury instruction, and the ends of justice exception permits the accused to raise this issue for the first time on appeal. See Johnson v. Commonwealth, 20 Va. App. 547, 553-54, 458 S.E.2d 599, 602 (1995) (*en banc*); see also Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991).

Herring v. Herring, 33 Va. App. 281, 287, 532 S.E.2d 923, 927 (2000) (emphasis and ellipses in original). Invocation of any exception to Rule 5A:18 is rare. See Jimenez, 241 Va. at 249, 402 S.E.2d at 680.

Appellant does not contend in support of his double jeopardy argument that he was convicted of conduct that is not criminal or that the record affirmatively proves he did not commit one of the offenses. He simply claims the error (assuming it was error) is clear, substantial, and material because he was subjected to double jeopardy. This tautological argument is not sufficient to invoke the ends of justice exception.

- 8 -

Error alone, even a violation of constitutional principles, is not sufficient to warrant application of the ends of justice exception to Rule 5A:18. See Ashby, 33 Va. App. at 544-45, 535 S.E.2d at 185 (explaining that objections based on constitutional principles must be made to the trial court in order to preserve the issue for appeal). The Virginia appellate courts have held previously that double jeopardy objections must be preserved before they can be considered on appeal. See Hubbard v. Commonwealth, 207 Va. 673, 678, 152 S.E.2d 250, 253 (1967) (finding double jeopardy is "akin" to an affirmative defense and "and if not raised in proper time is deemed to have been waived"); Cardwell v. Commonwealth, 28 Va. App. 563, 566, 507 S.E.2d 625, 627 (1998) (holding a defendant who pleads "guilty without raising a double jeopardy issue . . . has waived his right to appeal that issue"). Therefore, assuming, without deciding, that appellant's right against double jeopardy was violated,[2] that alleged fact does not create an ends of justice situation such that appellant did not have to preserve the issue for appeal.

Appellant also contends, although he may not have preserved a double jeopardy issue, the Commonwealth in its argument at trial presented the issue sufficiently to preserve it for appeal. However, appellant did not respond to the Commonwealth's comment that "it's *not double jeopardy* for aggravated manslaughter and a DUI. And, . . . it does not appear that involuntary manslaughter is a lesser included offense of aggravated manslaughter." (Emphasis added.) Because appellant did not contradict or even respond to this statement, the trial court was never asked to rule on the issue of double jeopardy. Additionally, Rule 5A:18 requires that "the objection" be stated "together with the grounds therefor at the time of the ruling." Neither the

---

[2] Appellant argues he cannot be convicted and sentenced twice when the incident involved only one victim. We note that that the Supreme Court of Virginia has held that a defendant can be convicted of two capital murders where only one person was killed. Payne v. Commonwealth, 257 Va. 216, 228, 509 S.E.2d 293, 301 (1999).

Commonwealth nor appellant objected to any trial court ruling based on double jeopardy grounds. Therefore, the issue is not preserved for appeal.

### A. Sufficiency of the Evidence

Appellant also contends the evidence was insufficient to convict him of aggravated involuntary manslaughter, involuntary manslaughter, and driving while intoxicated. He specifically argues (1) the certificates of analysis indicating appellant's blood alcohol level were inadmissible hearsay and, therefore, the evidence was insufficient to prove his blood alcohol level for a conviction under Code § 18.2-266(i), (2) the evidence did not prove appellant was "under the influence of alcohol" as required by Code §§ 18.2-266(ii) and 18.2-36.1, and (3) the evidence did not prove criminal negligence as required for a conviction of aggravated involuntary manslaughter under Code § 18.2-36.1(B).

### 1. Certificates of Analysis

This Court did not grant review of appellant's first contention regarding the certificates of analysis. In fact, the petition that granted appellant leave to appeal specifically denied an appeal based on the trial court's alleged error in accepting "inadmissible" hearsay. Assignments of error in criminal appeals to this Court are considered for appeal only after the petition has been granted. See Code § 17.1-406. Therefore, we will not address appellant's first sufficiency argument. See Perez v. Commonwealth, 25 Va. App. 137, 139 n.2, 486 S.E.2d 578, 579 n.2 (1997) (noting that where the Court granted a petition for appeal on one issue, yet on brief, appellant raised three issues, "[w]e did not grant appellant an appeal on the additional issues raised in his brief and will not address them"). The evidence was sufficient to convict appellant of driving while intoxicated under Code § 18.2-266(i).

## 2. Under the Influence

Secondly, appellant argues the evidence was insufficient to prove he was "under the influence of alcohol" as required for a manslaughter conviction under Code § 18.2-36.1.[3] He contends the testimony did not prove appellant appeared affected by alcohol or that his driving was affected by intoxication. We disagree.

Appellant contends this argument applies to both his involuntary manslaughter conviction and the conviction of aggravated manslaughter. However, as the Commonwealth points out, appellant's involuntary manslaughter conviction was under Code § 18.2-36, not Code § 18.2-36.1(A). Code § 18.2-36 provides a sentence for the common law crime of involuntary manslaughter, whereas § 18.2-36.1(A) delineates particular elements for a statutory crime of involuntary manslaughter, including the proof of violation of Code § 18.2-266(ii), (iii), or (iv). Therefore, his argument as stated is irrelevant to his involuntary manslaughter conviction under Code § 18.2-36. We will address his argument only as it relates to the aggravated conviction under Code § 18.2-36.1(B), which requires proof of the elements in Code § 18.2-36.1(A) and of conduct "so gross, wanton and culpable as to show a reckless disregard for human life."

When considering the sufficiency of the evidence on appeal in a criminal case, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible from the evidence. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). "In so doing we must '"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."'" Norman v.

---

[3] Appellant argues the evidence was insufficient to convict him of drunk driving, whether under Code § 18.2-266(i) or (ii). As we find the evidence was sufficient to convict him under (i), we need not further address whether the evidence was sufficient to convict of driving while intoxicated under Code § 18.2-266(ii).

Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954))).  "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

The trial court had sufficient evidence to conclude appellant was under the influence of alcohol at the time of the accident.  The court had several certificates of analysis indicating appellant was driving with a blood alcohol level of over .08 grams.  Under Code § 18.2-269(3), the trial court can presume from that evidence "that the accused was under the influence of alcohol intoxicants at the time of the alleged offense."  See Thurston v. City of Lynchburg, 15 Va. App. 475, 482, 424 S.E.2d 701, 705 (1992).  Additionally, the trial court heard testimony that appellant had the "strong smell" of alcohol about him, was "groggy, noncoherent,"[4] was passing other cars while driving at twenty-five miles per hour over the speed limit, and ran into another car on the interstate.  Appellant admitted he quickly drank a 22-ounce bottle of beer before getting into his car.  Expert testimony explained the adverse effects that alcohol has on the brain and on physical responses.  This evidence was sufficient for the court to find appellant was under the influence of alcohol when he caused the death of Jenkins.

### 3.  Criminal Negligence

Finally, appellant argues the evidence was insufficient to prove his conduct was "so gross, wanton and culpable as to show a reckless disregard for human life," Code § 18.2-36.1(B),

---

[4] Appellant suggests a head injury during the accident made him appear intoxicated. However, the trial court was not required to credit that testimony.  See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

and convict him of aggravated involuntary manslaughter.  This element of the crime of aggravated involuntary manslaughter has been labeled "criminal negligence."  Goodman v. Commonwealth, 37 Va. App. 374, 387, 558 S.E.2d 555, 562 (2002).  To prove that appellant's actions exhibited a reckless disregard for life, the Commonwealth presented evidence that "the conduct of the driver constitutes a great departure from that of a reasonable person (gross, wanton or willful conduct) which creates a great risk of injury to others and where by the application of an objective standard the accused should have realized the risk created by his conduct."  Keech v. Commonwealth, 9 Va. App. 272, 280, 386 S.E.2d 813, 817 (1989).  See also Cottee v. Commonwealth, 31 Va. App. 398, 400, 524 S.E.2d 132, 133 (2000).  The evidence here was sufficient to prove appellant's actions constituted "a great risk" to the lives of others.[5]

Appellant, by his own admission, drank almost twenty-two ounces of beer before getting into his car to drive.  According to credible testimony, he then drove, at night, at least twenty-five miles over the posted speed limit in the right-hand lane of the interstate, close to a major intersection where the exit is to the right.  By statute, the speed at which he drove is reckless driving.  Code § 46.2-862.  The evidence further proved the truck had its taillights on, yet appellant did not engage his brakes in order to avoid hitting the vehicle.  He hit the truck with such force that it flipped over and landed in the median of the interstate.  After the accident, appellant appeared intoxicated, and both the analyses of his blood and the testimony of an expert witness indicated that he was intoxicated to the point that his thinking and motor skills were affected.  The trial court did not err in concluding that, by driving in this condition, at an excessive speed and without paying attention to other vehicles on the road, appellant's actions

---

[5] Appellant does not argue he had no reason to believe his behavior would endanger others.  Therefore, we address only whether his behavior created a significant risk.

constituted behavior so gross, wanton and culpable as to show a reckless disregard for human life.

CONCLUSION

We find the trial court did not err in convicting appellant of driving under the influence, involuntary manslaughter, and aggravated involuntary manslaughter. We affirm those convictions.

Affirmed.

Elder, J., concurring, in part, and dissenting, in part:

I would hold that James Darrell West properly preserved his double jeopardy argument for appeal and that the imposition of punishment for both common law involuntary manslaughter and aggravated involuntary manslaughter pursuant to Code § 18.2-36.1(B) violated double jeopardy principles under the facts of this case. To the extent the majority concludes the evidence was sufficient to support West's remaining convictions, for aggravated involuntary manslaughter and driving while intoxicated, I concur in that portion of the opinion. Thus, I would reverse the conviction for involuntary manslaughter and affirm the convictions for aggravated involuntary manslaughter and driving while intoxicated.

I.

PRESERVATION OF DOUBLE JEOPARDY CLAIM FOR APPEAL

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

> The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals. In addition, a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding.

Ohree v. Commonwealth, 26 Va. App. 299, 307, 494 S.E.2d 484, 488 (1998). A party must raise the claimed error with sufficient specificity to allow the trial court to act. Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (*en banc*). A trial court "is not required to search for objections which counsel have not discovered." Darnell v. Commonwealth, 12 Va. App. 948, 952-53, 408 S.E.2d 540, 542 (1991).

- 15 -

Here, the Commonwealth first raised the double jeopardy issue at trial, arguing as

follows:

> [T]here is the intoxication evidence, there is the evidence of gross negligence, so I believe the evidence is sufficient for an aggravated [involuntary] manslaughter [conviction]. Judge, the laws in Virginia, it's not double jeopardy for aggravated [involuntary] manslaughter and a DUI. And, unfortunately, and I think it's, it's just the way the law is written, it does not appear that involuntary manslaughter is a lesser included offense of aggravated [involuntary] manslaughter. And for, I guess for appeal reasons, legal reasons, although there probably ought to be a lesser included offense, I think the way the statute is written, it's not, I would ask that he be convicted of that as well for appeal purposes.

Although appellant's counsel made no response at trial to the Commonwealth's position, he

made a specific objection at the sentencing hearing, which I would hold, read in light of the

Commonwealth's prior argument, was sufficient to preserve the double jeopardy issue for

appeal. Appellant's counsel argued as follows at sentencing:

> Judge, I don't think the Commonwealth should just throw this up to the Court and say, okay, we think the aggravated [involuntary] manslaughter and involuntary manslaughter [is for] the Court of Appeals [to] decide.
> We would request the Commonwealth make an election to begin with of which theory they were proceeding under. Now, they want you to make a decision and knowing full well of whatever you do, you're going to get reversed on one of them. And that's not a very good position to put this Court in and [appellant] because they should have made an election at some point in time of whether they wanted to go with involuntary or the aggravated [involuntary] manslaughter. And I would ask you to reconsider striking the aggravated [involuntary] manslaughter and just go on the involuntary manslaughter.

Appellant's objection was specific enough to alert the trial court to the basis for his objection,

and he was not required to use the words, "double jeopardy," or to cite any particular provision

of Code § 18.2-36.1 in order to preserve this issue for appeal. See Lash v. County of Henrico, 14

Va. App. 926, 929, 421 S.E.2d 851, 853 (1992) (*en banc*) (holding Rule 5A:18 "does not

prohibit reliance on statutes or cases not presented to the trial court to support, on appeal, a

- 16 -

position otherwise adequately presented at trial"); cf. Martin v. Commonwealth, 13 Va. App. 524, 529-30, 414 S.E.2d 401, 404-05 (1992) (*en banc*) (holding that tendering of assault instruction in attempted capital murder case was sufficient under Rule 5A:18 to "alert the trial judge and the Commonwealth that simple assault is a lesser-included offense of attempted capital murder and [that the defendant believed] sufficient evidence supported granting the instruction"). To hold otherwise would be to elevate form over substance.

Appellant's objection at the sentencing hearing also was sufficiently timely to preserve the issue for appeal. The simultaneous prosecution of a single defendant for two crimes arising out of the same criminal act does not implicate double jeopardy principles unless a court imposes multiple *punishments* for offenses that constitute the same crime. See Coleman v. Commonwealth, 261 Va. 196, 200, 539 S.E.2d 732, 734 (2001); Turner v. Commonwealth, 221 Va. 513, 529-30, 273 S.E.2d 36, 46-47 (1980); see also discussion, infra, Part II. Thus, double jeopardy did not become an issue until appellant was *sentenced* for the two crimes.

For these reasons, I would hold the double jeopardy issue is properly before us on appeal.

II.

MERITS OF DOUBLE JEOPARDY CLAIM

In the context of a single trial, "the double jeopardy defense does not apply unless (a) the defendant is twice punished for one criminal act, and (b) [either] the two punishments are . . . for the same crime or one punishment is for a crime which is a lesser included offense of the other," Coleman, 261 Va. at 200, 539 S.E.2d at 734 (referring to Blockburger test, see Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 2d 306 (1932), as test for "determin[ing] whether there are two offenses or only one" and which, in order to do so, considers "whether each [offense charged] requires proof of an additional fact which the other does not"), and (c) the legislature did not intend to authorize such multiple punishments, see

Payne v. Commonwealth, 257 Va. 216, 227, 509 S.E.2d 293, 300 (1999). Thus, double jeopardy principles permit simultaneous *prosecution* for a primary offense and a lesser-included offense arising from the same criminal act but prohibit the imposition of *sentence* for both offenses unless the legislature intended to authorize multiple punishments. See Turner, 221 Va. at 529-30, 273 S.E.2d at 46-47.

Here, appellant's convictions for common law involuntary manslaughter and aggravated involuntary manslaughter as defined in Code § 18.2-36.1(B) were based on the same act of criminally negligent driving and were rendered in the same proceeding. Although the punishments imposed as a result of those convictions were not for the same crime, I would hold the common law crime of involuntary manslaughter is lesser included in the statutory crime of aggravated involuntary manslaughter and, thus, that we must examine whether the legislature nevertheless intended to authorize multiple punishments for the same criminal act.

"A lesser included offense is an offense which is composed entirely of elements that are also elements of the greater offense." Kauffmann v. Commonwealth, 8 Va. App. 400, 409, 382 S.E.2d 279, 283 (1989). "The determination of what offenses are necessarily included lesser offenses . . . is based on the fundamental nature of the offenses involved, not on the particular facts of a specific case . . . ." Taylor v. Commonwealth, 11 Va. App. 649, 652, 400 S.E.2d 794, 795 (1991).

A conviction for common law involuntary manslaughter requires proof of an accidental death proximately caused by an act of criminal negligence. Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992); see Dalo v. Commonwealth, 37 Va. App. 156, 167, 554 S.E.2d 705, 710 (2001), aff'd, 264 Va. 431, 570 S.E.2d 840 (2002), cert. denied, 538 U.S. 924 (2003). A conviction for aggravated involuntary manslaughter as defined in Code § 18.2-36.1(B) requires proof of an accidental death proximately caused by an act of criminal

negligence "result[ing from] driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 or any local ordinance substantially similar thereto." Code § 18.2-36.1; Dalo, 37 Va. App. at 167 n.6, 554 S.E.2d at 710 n.6 (noting that a conviction under Code § 18.2-36.1(B), which requires proof that "the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life," requires proof of criminal negligence). Thus, the elements of common law involuntary manslaughter are entirely subsumed in the statutory crime of aggravated involuntary manslaughter, which requires proof of the additional element that the death was caused by the act of driving under the influence in violation of the specified subsections of Code § 18.2-266.

Although involuntary manslaughter is lesser included in aggravated involuntary manslaughter, the imposition of punishments for these two crimes in the same proceeding does not violate double jeopardy principles if the legislature intended to authorize multiple punishments:

> "'There is nothing in the Constitution which prevents [the legislature] from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction.' . . . [T]he Blockburger rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history."

Dalo, 37 Va. App. at 163, 554 S.E.2d at 708 (quoting Garrett v. United States, 471 U.S. 773, 778-79, 105 S. Ct. 2407, 2411, 85 L. Ed. 2d 764 (1985) (quoting Albrecht v. United States, 273 U.S. 1, 11, 47 S. Ct. 250, 254, 71 L. Ed. 505 (1927))).

Here, the language used in Code § 18.2-36.1(C) expresses the legislature's intent in defining the statutory crime of aggravated involuntary manslaughter. Subsection (C) states that "[t]he provisions of this section shall not preclude *prosecution* under any other homicide *statute*." Code § 18.2-36.1(C) (emphasis added). This language is subject to multiple

interpretations, all of which are consistent with one another but which do not include an expression of intent to override traditional double jeopardy principles.

The first set of interpretations involves the legislature's use of the word "prosecution" in Code § 18.2-36.1(C). One interpretation is that the very existence of the statute defining the offense of aggravated involuntary manslaughter does not require the Commonwealth to charge a defendant with aggravated involuntary manslaughter just because the death at issue resulted from an act of drunken driving that amounted to criminal negligence. Another interpretation is that the legislature intended to permit the Commonwealth to initiate simultaneous *prosecutions* for aggravated involuntary manslaughter and any other statutory homicide offense stemming from the same act of criminally negligent driving. However, although the statute permits *prosecution* under multiple statutes, it does not express a legislative intent to override the double jeopardy principle prohibiting the imposition of multiple *punishments* for the same offense, i.e., a primary offense and one lesser included within it. See Coleman, 261 Va. at 200, 539 S.E.2d at 734; Turner, 221 Va. at 529-30, 273 S.E.2d at 46-47. Thus, I would hold the Commonwealth may simultaneously *prosecute* an individual for aggravated involuntary manslaughter and a lesser-included offense but double jeopardy protections prevent it from imposing multiple punishments for those crimes because (1) they constitute only one offense and (2) the legislature has not clearly expressed an intent to permit the imposition of multiple punishments. Cf. Phillips v. Commonwealth, 257 Va. 548, 553, 514 S.E.2d 340, 343 (1999) (recognizing legislature knows difference between "prosecution" and "conviction" by noting former jeopardy provisions of Code § 19.2-294 provide that "[i]f the same act be a violation of two or more statutes . . . , conviction under one of such statutes . . . shall be a bar to a prosecution or proceeding under the other or others" and holding that "if the legislature had intended that the statutory bar apply to . . . felony cases [tried] in the circuit court [after the resolution in district court of misdemeanor

- 20 -

charges arising out of the same act], it would have provided that a conviction for a criminal offense arising out of one act would bar a later *conviction* for another offense arising out of the same act").

A second set of interpretations involves the legislature's statement that the "provisions of [Code § 18.2-36.1] shall not preclude prosecution under any other homicide *statute*." Code § 18.2-36.1(C) (emphasis added). Thus, even if Code § 18.2-36.1(C) could be construed to permit multiple *punishments* rather than merely multiple *prosecutions* for the same offense, its authorization of multiple punishments applies only to punishments rendered for convictions under other "homicide *statutes*." Code § 18.2-36.1(C) (emphasis added). This authorization would not apply to simultaneous punishment for ordinary involuntary manslaughter because it is a common law offense. The mere fact that a statute fixes the punishment for a common law crime does not transform that offense into a statutory crime. See Weaver v. Commonwealth, 25 Va. App. 95, 99-100 & n.1, 486 S.E.2d 558, 560 & n.1 (1997) (applying principle in context of Code § 19.2-294, which covers only statutory offenses). Although Code § 18.2-36 fixes the range of punishment for ordinary involuntary manslaughter, it remains a common law crime.

Because involuntary manslaughter is lesser included in aggravated involuntary manslaughter as defined in Code § 18.2-36.1 and the legislature has not expressed an intent to authorize multiple *punishments* for one criminal act that constitutes both involuntary manslaughter and aggravated involuntary manslaughter, I would hold the imposition of punishment for both offenses violated double jeopardy principles under the facts of this case.

III.

For these reasons, I would hold that West properly preserved his double jeopardy argument for appeal and that the imposition of punishment for both common law involuntary manslaughter and aggravated involuntary manslaughter pursuant to Code § 18.2-36.1(B) violated

double jeopardy principles under the facts of this case. As the Commonwealth acknowledges, the remedy for such an error is "to vacate both the conviction and sentence of the lesser included offense while leaving in place the conviction and sentence on the greater offense." Buchanan v. Commonwealth, 238 Va. 389, 415, 384 S.E.2d 757, 772 (1989). To the extent the majority concludes the evidence was sufficient to support West's remaining convictions, for aggravated involuntary manslaughter and driving while intoxicated, I concur in that portion of the opinion. Thus, I would reverse the conviction for involuntary manslaughter and affirm the convictions for aggravated involuntary manslaughter and driving while intoxicated.